EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:                                      | 2014 TSPR 135  |
|---------------------------------------------|----------------|
| Reglamento de Subastas de la Rama Judicial  | 192 DPR ____   |

Número del Caso: ER-2014-3

Fecha: 12 de noviembre de 2014

Materia: Reglamentos

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Reglamento de Subastas de la        ER-2014-03
Rama Judicial

RESOLUCIÓN

En San Juan, Puerto Rico, a 12 de noviembre de 2014.

Informes recientes de la Oficina del Contralor de Puerto Rico han revelado una serie de irregularidades en los procesos de subastas de la Rama Judicial que hacen necesario ejercer nuestro poder constitucional de reglamentación. Al respecto, la Oficina del Contralor de Puerto Rico emitió el Informe de Auditoría DA-12-52 de 19 de marzo de 2012 (Informe I) en el que detalló varios hallazgos relacionados a un contrato otorgado entre la Oficina de Administración de los Tribunales (OAT) y una corporación privada para el arrendamiento de los edificios donde ubican las oficinas de la OAT y del Tribunal de Apelaciones (TA). Los cinco hallazgos, clasificados como principales, resultan alarmantes. Según el Informe I, un hallazgo se clasifica como principal cuando incluye "desviaciones de disposiciones sobre las operaciones de la unidad auditada que tienen un efecto material, tanto en el aspecto cuantitativo como en el cualitativo". Informe de Auditoría DA-12-52 de 19 de marzo de 2012, pág. 11.

Los cinco hallazgos principales que menciona el Informe I son los siguientes:

Hallazgo 1 - Precontrato de arrendamiento de locales para el uso de la Rama Judicial otorgado a una corporación privada sin cumplir con el proceso de subasta, según requerido por reglamento, y contrato relacionado con dicho arrendamiento otorgado sin proteger los intereses de la OAT

Hallazgo 2 - Cánones estipulados en el contrato de arrendamiento de los edificios de la OAT y del TA que exceden las cantidades razonables que se pagan en el mercado[1]

Hallazgo 3 - Penalidades no impuestas a la Corporación por la entrega tardía del edificio para uso de la OAT[2]

Hallazgo 4 - Posibles conflictos de intereses de un funcionario de la Rama Judicial y un empleado de la firma de ingenieros a cargo de la Oficina de Inspección que representaba a la OAT en la construcción de los edificios[3]

Hallazgo 5 - Incumplimiento de disposiciones de la Ley Núm. 18 y del Reglamento Núm. 33 relacionadas con el registro de los contratos en la Oficina del Contralor de Puerto Rico[4]

Por su parte, en el Informe de Auditoría DA-12-53 de 19 de marzo de 2012 emitido por la Oficina del Contralor de Puerto Rico (Informe II) se identificaron varios hallazgos relacionados a un contrato de arrendamiento de los edificios para las salas de Relaciones de Familia y de Asuntos de Menores de Bayamón (SRFM) con una corporación

---

[1] "La situación comentada ocasionó que a la fecha de nuestro examen, 31 de octubre de 2009, la OAT incurriera en un gasto de $33,552,451 en exceso de renta razonable por los edificios de la OAT y del TA, y de prevalecer la situación, al cabo de los primeros 10 años se pagarían $30,810,358 adicionales, para un total de $64,362,809. En el segundo término de 10 años la OAT desembolsaría en exceso $74,027,649 y en el tercero $79,941,669. Esto representaría un total de $218,332,127 aproximadamente, pagados en exceso del canon de una renta razonable durante el término de 30 años del contrato". Informe de Auditoría DA-12-52, pág. 28.

[2] La tardanza en la entrega del edificio luego de construido fue de 45 días. Ante ello, correspondía imponer a la corporación una multa ascendente a $45,000, lo cual la OAT no hizo. Informe de Auditoría DA-12-52, pág. 31.

[3] La firma de ingenieros que representó a la OAT como Oficina de Inspección fue presidida por el esposo de la sobrina de un funcionario de la Rama Judicial. Informe de Auditoría DA-12-52, pág. 32.

[4] Los precontratos no se registraron en el Registro de Contratos de la OAT y tampoco se remitieron a la Oficina del Contralor. Además, las enmiendas A y B al contrato tampoco se remitieron a esa oficina dentro del término establecido. Informe de Auditoría DA-12-52, pág. 36.

privada. Los seis hallazgos clasificados como principales en el Informe II son los que se enumeran a continuación:

Hallazgo 1 - Posibles situaciones irregulares en el arrendamiento de los edificios de las salas de Relaciones de Familia y de Asuntos de Menores de Bayamón, y de estacionamientos[5]

Hallazgo 2 - Cánones estipulados en el contrato de arrendamiento del edificio de estacionamientos de las SRFM que exceden cantidades razonables que se pagan en el mercado[6]

Hallazgo 3 - Deficiencias relacionadas con el Contrato de Arrendamiento en el Registro de la Propiedad y la inscripción de este[7]

Hallazgo 4 - Deficiencias relacionadas con la construcción y el arrendamiento de un edificio para el Departamento de Justicia dentro de los terrenos cedidos en arrendamiento a la OAT

Hallazgo 5 - Posible conflicto de intereses del Ingeniero a cargo de la Oficina de Inspección que representaba a la OAT en la construcción de los edificios de las SRFM y de estacionamientos

Hallazgo 6 - Deficiencias relacionadas con las actas de las reuniones realizadas durante el proceso de construcción de los edificios de las SRFM y de estacionamientos

De los Informes I y II se desprende que la entonces Directora Administrativa de los Tribunales hizo unos comentarios en contestación a los hallazgos contenidos en ellos. No obstante, luego de evaluar todos los comentarios

---

[5] La entonces Directora Administrativa de los Tribunales formalizó dos contratos (en los años 2003 y 2004) con una corporación, a pesar de que una Jueza Superior asignada a la SRFM "participó en la toma de decisiones que culminó en el otorgamiento de los referidos contratos, a la vez que era representante, codueña de la propiedad y hermana del Presidente de la Corporación A. Para subsanar esta situación, la Directora Administrativa aceptó un fideicomiso que representaría los intereses de la Jueza Superior". Informe de Auditoría DA-12-53, págs. 17-18. Ese fideicomiso falló en proteger los intereses de la Rama Judicial, según surge del propio informe. Íd., pág. 26.

[6] Para octubre de 2009, cuando se realizó el estudio, la OAT había incurrido en un gasto de $6,343,210 en exceso de la renta razonable por el edificio de estacionamientos de las SRFM. Eso se traduciría a un total de $68,099,875 aproximadamente, pagados en exceso de una renta razonable durante el término de 30 años del contrato. Informe de Auditoría DA-12-53, pág. 32.

[7] El Contrato de Arrendamiento no se elevó a escritura pública para ser inscrito en el Registro de la Propiedad de Puerto Rico. Informe de Auditoría DA-12-53, pág. 33.

y explicaciones al efecto, la Oficina del Contralor sostuvo cada uno de los hallazgos vertidos en los informes.

Ambos informes revelan que las operaciones investigadas no se realizaron de acuerdo con la ley y la reglamentación aplicables. Informe de Auditoría DA-12-52, pág. 6; Informe de Auditoría DA-12-53, pág. 7. Por ello, los informes se refirieron al Secretario de Justicia para que este considerara los hallazgos allí descritos y tomara las medidas correspondientes. En atención a los hallazgos y observaciones que señalan los Informes de la Oficina del Contralor, es necesario aprobar un nuevo reglamento para dirigir los procesos de subastas en los tribunales.

La Constitución de Puerto Rico establece que el Poder Judicial se ejercerá por el Tribunal Supremo. Const. PR, Art. V, Sec. 1, LPRA, Tomo I. Además, dispone que será el Tribunal Supremo quien adopte las reglas para la administración de los tribunales y el Juez Presidente quien dirigirá la administración de estos. Const. PR, Art. V, Sec. 7, LPRA, Tomo I.

La Comisión de la Rama Judicial de la Convención Constituyente estableció que la intención de esas cláusulas constitucionales era "traspas[ar] al Tribunal Supremo la facultad de administrar los tribunales de justicia de Puerto Rico…". 4 Diario de Sesiones de la Convención Constituyente 2613 (ed. Conmemorativa 2003). Es decir, que "constitucionalmente es el Pleno del Tribunal Supremo el que formula, de entenderlo necesario, el cuerpo de reglas administrativas de toda la Rama Judicial". In re Aprob. Rs. y Com. Esp. Ind., 184 DPR 575, 582 (2012). Por su parte, al Juez Presidente se le delegó "el poder de *ejecutar* las reglas adoptadas por el Pleno del Tribunal Supremo en cuanto a la administración de los tribunales", con la ayuda de un Director Administrativo que el propio Juez Presidente escoge. Íd. (Énfasis en el original.) Véase, además, Const. PR, Art. V Sec.7, supra. Así, se evita una concentración excesiva de poder en una sola figura.

De esta manera, la Constitución creó un esquema de doble delegación de poder mediante el cual el Tribunal Supremo establece la política pública para administrar la Rama Judicial a través del poder de reglamentación que le otorga la Constitución, y el Juez Presidente la ejecuta. Siguiendo ese esquema, en innumerables ocasiones el Tribunal en pleno ha ejercido su poder de reglamentación y ha aprobado reglamentos para la administración de la Rama Judicial. Íd., pág. 577. Véanse, por ejemplo, Reglas de Disciplina Judicial, 4 LPRA Ap. XV-B; Reglas de Administración del Sistema de Personal de la Rama Judicial, 4 LPRA AP. XII; Reglamento de la Administración del Sistema de Personal de la Rama Judicial (1974), 4 LPRA AP. XIII;

Reglas para la Administración del Tribunal de Primera Instancia de Puerto Rico, 4 LPRA AP. II-B.

Ciertamente, la facultad de dirigir el proceso para adjudicar subastas recae sobre la Jueza Presidenta como parte de sus poderes de administración. Sin embargo, el Tribunal Supremo en pleno posee la autoridad para aprobar reglas que guíen el proceso administrativo de subastas en los tribunales. Ninguna ley puede alterar esto. Por ello, se encomienda al Secretariado de la Conferencia Judicial preparar y someter a este Tribunal, dentro de un período de seis meses, un borrador de un nuevo reglamento de subastas para la Rama Judicial que atienda la problemática manifestada en los Informes I y II del Contralor mencionados anteriormente, así como cualquier otro asunto que asegure una mayor transparencia en los procedimientos y garantice el uso óptimo de los recursos públicos. Solo así puede ganarse la confianza que el pueblo ha depositado en la Rama Judicial.

En ese ánimo, deberá atenderse lo relacionado a la composición de la Junta de Subastas. Actualmente, esa junta cuenta con solo tres miembros, de los cuales dos fueron nombrados por la Directora Administrativa de los Tribunales. El nuevo reglamento deberá contemplar cambiar la composición de la Junta de Subastas y sustituir al representante del Tribunal Supremo por un representante del interés público que no mantenga un vínculo con la Rama Judicial.

Notifíquese inmediatamente a la Directora del Secretariado de la Conferencia Judicial.

Publíquese.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco emitió un Voto Particular de Conformidad. La Jueza Asociada señora Fiol Matta emitió un Voto Particular Disidente al que se unieron la Juez Asociada señora Rodríguez Rodríguez y la Jueza Asociada Oronoz Rodríguez. La Jueza Asociada Oronoz Rodríguez emitió las siguientes expresiones, las que suscribió la Juez Asociada señora Rodríguez Rodríguez:

> La Jueza Asociada Oronoz Rodríguez coincide en que procede revisar el Reglamento de Subastas de Bienes y Servicios de la Rama Judicial en aras de lograr mayor efectividad en los procedimientos de adquisición de bienes y recursos para el cabal cumplimiento de nuestras funciones como Rama Judicial.
>
> No obstante, el artículo 1 de la Ley Núm. 345 del 2 de septiembre de 2000 (Ley Núm. 345)

precisa en la Jueza Presidenta la facultad para ordenar la revisión del Reglamento de Subastas de Bienes y Servicios de la Rama Judicial. En vista de lo anterior, disiento del curso de acción avalado por una mayoría de este Tribunal. La determinación tomada en el día de hoy obvia el texto claro de la Ley Núm. 345 e intenta declarar inconstitucional su artículo 1 mediante una resolución y en manifiesto desdén de los más elementales principios de justiciabilidad que vinculan el ejercicio de nuestro poder de revisión judicial al contexto adversativo de un caso o controversia.

Por último, me parece irónico que la Resolución señale que debe asegurarse "una mayor transparencia en los procedimientos" pues "sólo así puede ganarse la confianza que el pueblo ha depositado en la Rama Judicial". Ello pues, una vez más, en lo que aparenta ser un patrón de algunos miembros de esta Curia, la Resolución que hoy se aprueba se certificó en menos de 24 horas laborables desde que se circuló por primera vez. Si bien los asuntos que propendan a una mejor administración de la Rama Judicial deben atenderse con premura y diligencia, no existe urgencia o justificación que amerite certificar este asunto en tan corto período. Después de todo, los informes a los que hace referencia la Resolución tienen más de dos años y el borrador de un nuevo reglamento, según se instruyó en la propia Resolución, demorará al menos seis meses.

La forma apresurada en que se ha procedido, en ésta y otras ocasiones, no comulga con la manera en que debe funcionar un tribunal colegiado. Si el interés de trabajar para que el País tenga confianza en la Rama Judicial es genuino, debemos comenzar por comportarnos a la altura de lo que predicamos.


                          Aida Ileana Oquendo Graulau
                          Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Reglamento de Subastas de la
Rama Judicial

ER-2014-03

Voto Particular de Conformidad emitido por la Jueza Asociada
señora Pabón Charneco.

En San Juan, Puerto Rico, a 12 de noviembre de 2014.

Ha transcurrido más de un mes desde que el compañero Juez Asociado señor Estrella Martínez le expresó a la Jueza Presidenta señora Fiol Matta la necesidad de introducir cambios al cuerpo reglamentario de los asuntos de subastas de la Rama Judicial. A ese pedido público también se unió el compañero Juez Asociado señor Kolthoff Caraballo. A su vez, otros compañeros miembros de este Tribunal le han solicitado personalmente a la Jueza Presidenta que atienda los cuestionamientos públicos que han surgido en

cuanto a varias subastas que la Rama Judicial ha llevado a cabo.

Lamentablemente, ese reclamo de acción no ha sido atendido y hoy cuenta además, con un desafortunado voto disidente de la propia Jueza Presidenta señora Fiol Matta. Por ello, no queda otra alternativa que no sea la de ordenar que se redacte un nuevo Reglamento de Subastas en aras de atemperar nuestra Rama a las exigencias de los tiempos.

Ya que considero que la Resolución que hoy se certifica representa otra medida necesaria para forjar nuevos caminos en la administración de la Rama Judicial, estoy conforme con esta. Me conforta saber que a pesar de que han transcurrido dos (2) años desde que emití una Opinión Disidente en *Maranello et al. v. O.A.T.*, 186 D.P.R. 780 (2012), donde llamé la atención a las prácticas irregulares que se dieron en las subastas objeto de los mismos dos Informes que se mencionan en la Resolución que antecede, este Tribunal decida establecer un procedimiento para cambiar y fiscalizar la manera en que se han manejado estos asuntos en el pasado.

Por demasiado tiempo la administración de la Rama Judicial se ha refugiado en la oscuridad y en la comodidad del conformismo. Ya es momento de alumbrar la burocracia que hasta ahora ha sobrevivido en pasillos oscuros y poner las cartas sobre la mesa. El Pueblo ha colocado a esta Rama en tela de juicio e ineludiblemente debemos responder

a su grito de cambio. Ante ese escenario, debemos demostrarles que la Rama Judicial no sucumbirá a prácticas cuestionables ni responderá a intereses exógenos que empañen la transparencia de nuestro quehacer y obstaculicen nuestra labor constitucional.

Esto porque la Rama Judicial de Puerto Rico es mucho más que otra rama constitucional del gobierno. Nuestra *lex superior* le encomienda a esta Rama ser el ente garante de los derechos civiles de nuestros ciudadanos, el árbitro de las fronteras existentes del ámbito de acción entre las otras ramas de gobierno y el administrador del sistema de justicia de la Isla. Ante esa delicada responsabilidad, es justo que el Pueblo de Puerto Rico exija de la Rama Judicial un manejo altamente transparente de los fondos públicos que le son asignados para la consecución de sus deberes. Debemos responder de manera afirmativa ante las exigencias de estos tiempos para abatir hasta la más mínima apariencia de irregularidad en el manejo del erario que se nos ha asignado para llevar a cabo nuestra labor y servirle al Pueblo de Puerto Rico de manera responsable. No podemos ser copartícipes de acciones que continúen menguando la confianza del Pueblo en su sistema de justicia.

Por ello, en *Manarello et al. v. O.A.T., supra,* señalé y rechacé vehementemente la manera en que la Oficina de Administración de los Tribunales (O.A.T.) convalidó un procedimiento de subasta en el que se terminó

despilfarrando una cantidad exorbitante de fondos públicos precisamente en los dos edificios que se mencionan en la Resolución que antecede. Por su pertinencia, cito *in extenso* mis pronunciamientos disidentes en aquella ocasión:

> [L]a señora Contralora concluyó que los edificios de la OAT y el TA y sus estacionamientos están alquilados por un canon de arrendamiento muy por encima de lo que se paga en el mercado por espacios de alquiler en edificios similares...El informe indica que al considerar la calidad de la construcción y las terminaciones interiores de los edificios de la OAT y del Tribunal de Apelaciones, la renta debería estar en el límite inferior de diecinueve dólares ($19) por pie cuadrado. Peor aún, en cuanto a la renta del estacionamiento, la Contralora indicó que mensualmente se paga cuatrocientos siete mil ochocientos ocho dólares ($407,808) mientras que el precio del mercado es de una renta mensual de ochenta y ocho mil quinientos dólares ($88,500). Esta renta cubre el uso de setecientos ocho (708) estacionamientos. Según estos datos, **el costo mensual por cada estacionamiento para cada empleado asciende a quinientos setenta y seis dólares mensuales ($576); mientras que en los edificios comparables se paga una renta de estacionamiento ascendiente a ciento veinticinco dólares ($125) mensuales.** Según la Contralora, esta contratación le conlleva al erario un pago de rentas en exceso de cerca de tres millones ochocientos treinta y un mil seiscientos noventa y seis dólares ($3,831,696). *Maranello et al. v. O.A.T.*, *supra*, págs. 839-840.

No existe justificación alguna que sustente la necesidad de este monumental gasto público. En tiempos como los que atraviesa Puerto Rico, y ante los señalamientos que se le han hecho a miembros de la Rama Judicial, es absolutamente necesario que se modifique de manera concreta la manera en que esta Rama ha manejado por demasiado tiempo el asunto de las subastas.

En fin, ante la coyuntura por la cual atraviesa la Rama Judicial no podemos desaprovechar la oportunidad histórica para trazar nuevos caminos. Cuando una acción perdura sin cuestionamiento el conformismo que le da vida se convierte en un paradigma peligroso. Ya es tiempo de romper este esquema. Este nuevo reto, requiere tener valentía para actuar y la sabiduría para entender que a pesar de que el camino es arduo y perpetuo, un sistema de justicia verdaderamente transparente es posible. Consciente de lo anterior, reitero mi conformidad con la Resolución que antecede. Esta constituye una piedra angular en este nuevo camino que tiene como norte la administración responsable de la Rama Judicial.

Mildred G. Pabón Charneco
Jueza Asociad

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Reglamento de Subastas de la          ER-2014-3
Rama Judicial

Voto Particular Disidente emitido por la Jueza Presidenta SEÑORA FIOL MATTA al cual se unen la Juez Asociada SEÑORA RODRÍGUEZ RODRÍGUEZ y la JUEZA ASOCIADA ORONOZ RODRÍGUEZ

En San Juan, Puerto Rico, a 12 de noviembre de 2014.

La confianza que nuestro Pueblo ha depositado en su Judicatura merece nuestra mayor dedicación, respeto y protección. Esa confianza es, precisamente, la base fundamental de la Independencia Judicial y la fuerza que legitima el poder de nuestra Rama de gobierno. Por eso, siempre he tomado todas las medidas necesarias para preservar la fe de los puertorriqueños en su Sistema de Justicia. Ahora, como Jueza Presidenta, continúo con la misión de enaltecer esos principios y de brindar todo mi esfuerzo para lograr mayor Justicia.

Por eso, con el propósito de aumentar la confianza del Pueblo puertorriqueño en su Rama Judicial, coincido con la necesidad de evaluar

propuestas de enmiendas al Reglamento de Subastas Formales de Bienes y Servicios de la Rama Judicial que estén dirigidas a promover el acceso a la justicia, la transparencia de los procedimientos y a asegurar la confianza de los puertorriqueños en la Judicatura.

Sin embargo, la Resolución que hoy se certifica va más allá al hacer expresiones sobre el poder de reglamentación de este Tribunal que son totalmente innecesarias para lograr el fin de encomendar al Secretariado de la Conferencia Judicial la preparación de una propuesta de nuevas reglas para los procedimientos de subastas de la Rama Judicial.

I

La Resolución que una mayoría de este Tribunal suscribe hoy se apoya en las irregularidades señaladas por la Oficina del Contralor de Puerto Rico en dos Informes de auditoría preparados en el 2012,[8] para llegar a dos conclusiones: que se deben hacer cambios en las reglas que gobiernan los procesos de subastas de la Rama Judicial y que la mayoría del Pleno del Tribunal posee la autoridad para aprobar las nuevas reglas, autoridad que no puede alterar ninguna ley.

Sin embargo, la Resolución no discute ni menciona la reglamentación vigente: el Reglamento de Subastas Formales de

---

[8] Como resultado de los hallazgos del Contralor se suscribieron Planes de Acción Correctiva, e incluso se ha acudido a los tribunales para reclamar el cumplimiento de los planes remediales. Véase, Reglamento para la Administración del Plan de Acción Correctiva de la Oficina del Contralor, Reglamento Núm. 26. Como parte de los planes correctivos, la Rama Judicial se encuentra en negociaciones para ajustar los términos contractuales señalados por el Contralor. Tan reciente como el 15 de octubre de 2014, el Tribunal de Primera Instancia de San Juan falló a favor de la Rama Judicial en un caso en el que se le reclama al arrendador el ajuste del canon de arrendamiento a su valor razonable en mercado.

Bienes y Servicios de la Rama Judicial del 1 de julio de 2003. Tampoco expone las disposiciones legales y constitucionales relacionadas con la aprobación de dichas reglas, específicamente, la Ley Núm. 345-2000 y la Sección 7 del Artículo V de la Constitución del Estado Libre Asociado de Puerto Rico. Las conclusiones, el curso de acción y las encomiendas aprobadas en la Resolución ignoran por completo la naturaleza y la base jurídica de la reglamentación con la que interfiere. Por esas razones, me corresponde explicar la naturaleza y la base de la reglamentación vigente

Nuestra Constitución, en la Sección 7 del Artículo V dispone que:

> El Tribunal Supremo adoptará las reglas para la administración de los tribunales las que estarán sujetas a las leyes relativas a suministros, personal, asignación y fiscalización de fondos, y a otras leyes aplicables en general al gobierno. El Juez Presidente dirigirá la administración de los tribunales y nombrará un director administrativo, quien desempeñará su cargo a discreción de dicho magistrado.[9]

De entrada debemos notar que el texto de esta sección condiciona el ejercicio del poder de reglamentación a que se sigan las leyes de fiscalización y asignación de fondos, así como aquellas dirigidas a regular los suministros y el personal de la Rama Judicial. Según sus términos, esta condición no supone un listado taxativo pues reconoce "otras leyes aplicables en general al gobierno". Por lo tanto, no cabe hablar de un reconocimiento constitucional expreso de autorización para promulgar reglas para fiscalizar los fondos de nuestra Rama Judicial.

---

[9] Art. V, Sec. 7 Const. ELA, LPRA, Tomo 1.

Debido a su diseño delicado y propósitos, la interpretación de las disposiciones de nuestra Constitución debe ser producto de un análisis profundo y debe evitar el extremo textualista y sistemático.[10] Debemos interpretar su totalidad y no meramente sus disposiciones por separado. Tampoco podemos sustraer el texto constitucional de la historia que le dio su fuerza. En fin, por su importancia dentro de nuestro sistema democrático, nuestra Constitución merece un estudio sosegado tanto de sus disposiciones, como de su historia y su función en nuestro ordenamiento.

Entre los asuntos más discutidos por los miembros de la Convención Constituyente al considerar la Sección 7 resalta el tema de la fiscalización de los fondos públicos. Particularmente, se distingue la discusión entre los delegados Ramos Antonini y Muñoz Rivera. En respuesta a preguntas sobre la fiscalización de los fondos, Ramos Antonini explicó que "[e]sta materia está gobernada por la voluntad legislativa según dispongan las leyes".[11] Ante esa aseveración, el señor Muñoz Rivera preguntó "¿La Asamblea Legislativa tiene el poder para determinar que los fondos asignados al Tribunal Supremo sean fiscalizados previamente?".[12] El señor Ramos Antonini contestó: "claro".[13] Más adelante, el señor delegado Valentín Vizcarrondo cuestionó la frase "otras leyes aplicables" como límite a la autoridad del Tribunal para reglamentar. Finalmente, el señor

---

[10] Normalmente utilizado para la interpretación de estatutos promulgados por la Asamblea Legislativa. K. Stack, The Divergence of Constitutional and Statutory Interpretation, 75 U. Colo.L. Rev. 1 (2004).

[11] 3 Diario de Sesiones de la Convención Constituyente 1666 (ed. Conmemorativa 2003).

[12] Íd.

[13] Íd.

Ramos Antonini explicó "[c]ompañero, cualquier ley que pueda ser aplicable en materia de administración a cualquier rama de gobierno será aplicable al Tribunal Supremo de Puerto Rico en materia de administración".[14]

Como expliqué en mi Voto particular disidente en In re Aprob. Rs. Y Com. Esp. Ind., luego de considerar, entre otros, estos factores:

> Resulta, pues, meridianamente claro que la frase "sujetas a ... [la] fiscalización de fondos" en la primera oración de la Sección 7, que la mayoría enfatiza para afirmar su facultad no sólo para aprobar reglas sobre este asunto sino para revocar la decisión de iniciar una investigación autorizada por el Juez Presidente, no le concede al Tribunal facultad alguna. El único efecto de esta parte de la Sección 7 es el que indica el texto: someter el poder de reglamentar la administración de los tribunales a las leyes aprobadas por la Asamblea Legislativa para el Gobierno en general. El Pleno del Tribunal Supremo no puede derivar de esa oración la facultad de revocar las decisiones administrativas del Juez Presidente ni arrogarse la función exclusiva de reglamentar cómo se fiscalizarán los recursos de la Rama Judicial. Esa posibilidad fue descartada por la Convención Constituyente.[15]

La Ley Núm. 345-2000 de 2 de septiembre de 2000,[16] dispone lo siguiente:

> Art. 1. El Juez Presidente del Tribunal Supremo de Puerto Rico o el Director Administrativo de los Tribunales, por delegación de éste, tendrá la facultad para:
>
> (a) Adquirir en cualquier forma legal, incluyendo pero sin limitarse a la adquisición por compra, arrendamiento con opción a compra, manda, legado, o donación; así como poseer, conservar, usar, disponer cualquier bien ya sea mueble o inmueble, mejorado o sin mejorar; valor, derecho o interés en el mismo, de la

---

[14] Íd.

[15] 184 DPR 575, 640 (2012).

[16] Esta Ley está reconocida en la colección de Leyes de Puerto Rico Anotadas en una nota en la sección relativa a las secciones especiales en el historial de 4 LPRA sec. 24(j).

forma que considere más efectiva eficiente y necesaria en beneficio de la Rama Judicial.

(b) Comparecer en los contratos y formalizar todos los instrumentos que fueren necesarios o convenientes para el logro de los fines y propósitos de esta Ley.

(c) Disfrutar de exención del pago de contribuciones, arbitrios o impuestos sobre la propiedad adquirida.

(d) Disfrutar de exención del pago de toda clase de derechos requeridos por ley para la prosecución de los procedimientos judiciales, la emisión de certificaciones en las oficinas y dependencias del Estado Libre Asociado de Puerto Rico y la ejecución de documentos públicos y su presentación en cualquier registro público de Puerto Rico.

(e) Demandar y ser demandado en relación con las facultades y poderes conferidos en esta Ley.

(f) <u>Aprobar la reglamentación necesaria para implantar la facultad conferida en esta Ley.</u>

Art. 2. En el cumplimiento de las facultades a que se refiere esta Ley, el Juez Presidente del Tribunal Supremo y el Director Administrativo de los Tribunales, estarán exentos de las disposiciones de la Ley Núm. 56 de 19 de junio de 1958, según enmendada [secs. 901 et seq. del Título 22], conocida como 'Ley de Autoridad de Edificios Públicos'. En caso de adquisición de inmuebles mediante contrato de arrendamiento con opción, la misma se llevará a cabo mediante subasta pública, conforme a la reglamentación que a esos fines se apruebe. No obstante, el Juez Presidente o el Director Administrativo de los Tribunales podrá solicitar asesoramiento de la Autoridad de Edificios Públicos, si lo estima pertinente, en cuanto al procedimiento de convocatoria, negociación, adjudicación y contratación en estos casos.[17]

Bajo la facultad delegada en la Ley Núm. 345-2000, *supra*, el entonces Juez Presidente, Hon. José A. Andreu García, promulgó el Reglamento de Subastas Formales de Bienes y Servicios de la Rama Judicial del 1 de julio de 2003. Este Reglamento derogó varios artículos del Reglamento de Servicios, Suministros y Funciones relacionadas a esta Rama Judicial de 11 de mayo de 1992. Recientemente, una mayoría de

---

[17] Ley Núm. 345-2000, *supra*, (énfasis suplido).

este Tribunal reconoció y avaló las disposiciones de la Ley Núm. 345-2000, *supra*, así como el Reglamento de Subastas Formales para Bienes y Servicios de la Rama Judicial.[18]

La Ley Núm. 345-2000, *supra*, tiene su base legal en las facultades constitucionales de la Asamblea Legislativa de Puerto Rico y su fundamento específico en la limitación constitucional de las facultades del Tribunal Supremo en lo referente a fondos públicos recogida en la Sección 7 que discutimos anteriormente. Es decir, la ley se aprobó como ejercicio del poder de la Asamblea Legislativa para "sujeta[r]..." las reglas para la administración de los tribunales que adopte el Tribunal Supremo "a las leyes relativas a suministros, personal, asignación y fiscalización de fondos, y a otras leyes aplicables en general al

---

[18] <u>Maranello v. O.A.T.,</u> 186 DPR 780, 791 (2012). En esa ocasión la mayoría expresó:

> Al amparo de la Ley Núm. 345-2000 (4 L.P.R.A. sec. 24 *et seq.*), la Asamblea Legislativa facultó al Juez Presidente del Tribunal Supremo o a la Directora Administrativa de los Tribunales, por delegación de este, para adquirir bienes y servicios "de la forma que considere más efectiva, eficiente y necesaria en beneficio de la Rama Judicial". Art. 1(a) de la Ley Núm. 345 (4 L.P.R.A. sec. 24(j)).
>
> De acuerdo con la autoridad conferida, se aprobó el Reglamento de Subastas Formales de Bienes y Servicios de la Rama Judicial, 1 de julio de 2003, mediante el cual se estableció un procedimiento uniforme para llevar a cabo la adquisición de bienes y servicios en la Rama Judicial, la evaluación de las propuestas de los licitadores, la adjudicación de subastas y el ingreso de suplidores en el Registro, entre otros aspectos pertinentes al proceso.

Incluso, la Opinión disidente de la Jueza Asociada señora Pabón Charneco, a la que se unió el Juez Asociado señor Feliberti Cintrón, expresó preocupaciones legítimas sobre los Informes de la Oficina del Contralor que dan pie a la Resolución que hoy se certifica. Pero no cuestionó la validez de la Ley Núm. 345-2000, *supra*, ni del Reglamento de Subastas Formales de Bienes y Servicios de la Rama Judicial.

gobierno".[19] Negar esta realidad incide directamente en los principios de separación de poderes de nuestro gobierno republicano. El examen de la Ley para determinar si sus disposiciones específicas están dentro de los límites de la facultad legislativa, requeriría cumplir los criterios mínimos necesarios de justiciabilidad, constitucionales y prudenciales, que demarcan los límites del ejercicio de las funciones de este Tribunal en materia constitucional. Eso solo es posible -en verdadera juricidad- en el contexto de un caso y controversia.[20] No tenemos ante nuestra consideración dicho caso o controversia, por lo cual no es ni necesario ni prudente ni correcto expresarnos al respecto. Además, la Resolución no resuelve nada en cuanto a la limitación del poder del Tribunal en asuntos de fiscalización ni sobre la validez de la Ley Núm. 345-2000, *supra*.[21]

    Por todo lo anterior, disiento.


                    Liana Fiol Matta
                    Jueza Presidenta

---

[19] Art. V, Sec. 7, Const. ELA, LPRA, Tomo 1.

[20] ELA v. Aguayo, 80 DPR 554 (1958); R. Serrano Geyls, Derecho Constitucional de Estados Unidos y Puerto Rico (1997) Vol. 1, pág. 97.

[21] La Resolución, ignorando el texto de la Sección 7 del Artículo V de nuestra Constitución, indica que "el Tribunal Supremo en pleno posee la autoridad para aprobar reglas que guíen el proceso administrativo de subasta en los tribunales. Ninguna ley puede alterar esto". Véase, Resolución, pág. 5.