EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Para eliminar el inciso (d) del Artículo 10.9; enmendar los Artículos 18.1, 19.1, 19.9 y 19.10 del Reglamento de la Administración del Sistema de Personal de la Rama Judicial según enmendado | 2015 TSPR 22<br><br>192 DPR ____ |

Número del Caso: ER-2015-2

Fecha: 9 de marzo de 2015

Materia: Resolución del Tribunal con Votos

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Para eliminar el inciso (d) del Artículo 10.9; enmendar los Artículos 18.1, 19.1, 19.9 y 19.10 del Reglamento de la Administración del Sistema de Personal de la Rama Judicial según enmendado

ER-2015-2

RESOLUCIÓN

En San Juan, Puerto Rico, a 9 de marzo de 2015.

El año pasado, la situación fiscal del Estado Libre Asociado de Puerto Rico tomó un giro devastador ante la degradación del crédito público. Esta situación afectó la capacidad del gobierno de cumplir con sus responsabilidades y las necesidades del País. Ello incidió directamente en el presupuesto de la Rama Judicial, a pesar de que por los pasados años la Rama Judicial ha administrado sus fondos sin reportar deficiencia presupuestaria y sin incumplir con las responsabilidades contraídas.

En virtud de la Ley Núm. 66-2014, mejor conocida como la Ley Especial de Sostenibilidad Fiscal y Operacional del Gobierno del Estado Libre Asociado de Puerto Rico, para el presente año fiscal la asignación presupuestaria para la Rama Judicial sufrió un recorte de sobre 14% del presupuesto que le correspondía por aplicación de la Ley 286-2002, reducción equivalente a casi $54 millones de dólares. Esto como resultado de la congelación de la fórmula que dispone para la asignación del presupuesto a la Rama Judicial.

El recorte presupuestario creó un desbalance en el cuadro fiscal de la Rama Judicial para el año en curso, ya que a base de la autonomía presupuestaria

que estableció la Ley 286-2002, se había proyectado una asignación mayor y, por consiguiente, un presupuesto operacional mayor. Esta situación ha causado serias limitaciones en la implantación y desarrollo de los planes y proyectos encaminados, pero más aún afectó la capacidad de la Rama Judicial de poder cumplir con las obligaciones contraídas.

Si bien la independencia y autonomía presupuestaria de la Rama Judicial como uno de los tres poderes constitucionales no es negociable, en ese momento, la Rama Judicial asumió la responsabilidad de aportar a la solución de la precaria situación fiscal de Puerto Rico. Por ello, enfrentó el recorte presupuestario con un plan estructurado de ahorro y control de gastos, velando que éste no menoscabara los servicios que está llamada a proveer a la ciudadanía, pero más aún que no afectara su responsabilidad hacia los buenos funcionarios y buenas funcionarias que hacen posible la función judicial. Por otro lado, la Rama Judicial también se enfrascó en un análisis de sus posibilidades de allegar fondos adicionales. Este estudio ha resultado en proyectos de ley que se propondrán a la Asamblea Legislativa con el propósito de mayor captación de dinero para el Fondo Especial de la Rama Judicial.

En los primeros seis meses de este año fiscal, la Rama Judicial ha implantado estrictas medidas de control de gastos, entre las que se encuentran: la reducción significativa de los contratos por servicios, la suspensión de reclutamiento de personal no esencial, la renegociación de los cánones de arrendamiento de los locales privados desde donde operan muchos de los tribunales, el traslado de operaciones judiciales a otros edificios y centros judiciales, con el cierre resultante de sedes periferales y la reorganización y reducción de la Oficina de Administración de Tribunales. Asimismo, la Rama Judicial ha implantado rigurosas medidas para controlar el consumo de electricidad, agua, combustible y materiales. Estas medidas lograron ahorros significativos de forma inmediata, pero lo que se pretende es que resulten en ahorros a largo plazo también. Más importante aún estas medidas se han implantado para garantizar la continuidad en la provisión eficiente y efectiva de los servicios judiciales.

Sin embargo, la implantación de estas medidas no ha sido suficiente para lograr el balance del presupuesto. No obstante, la Rama Judicial continuará su agresivo esfuerzo de renegociar y lograr ahorros en la partida de arrendamiento de locales privados y en la redistribución de operaciones en otros edificios y otros centros judiciales. Por otro lado, aplicar más recortes en las partidas de servicios y utilidades, que representa el 30%

del presupuesto operacional de la Rama Judicial, afectaría de forma negativa la operación de nuestros tribunales, y aun así no serían suficientes para conjurar la situación.

La realidad fiscal nos requiere en este momento adoptar, de forma preventiva, unas enmiendas al Reglamento de la Administración del Sistema de Personal de la Rama Judicial de 30 de agosto 1974, 4 L.P.R.A. Ap. XIII, para evitar tener que implantar medidas que afecten derechos principales de nuestros funcionarios y funcionarias. La Rama Judicial se mantendrá evaluando la situación fiscal y los efectos de las medidas de ahorro y control de gastos adoptados, con el compromiso de que cuando el presupuesto se balancee se provea para el restablecimiento de los beneficios trastocados.

Recalcamos que la política administrativa de la Rama Judicial es proteger el empleo de sus funcionarios y funcionarias ya que reconoce que el recurso humano es su más valioso capital; por ello no se han implantado medidas para recortar la nómina ni los beneficios principales que disfruta el personal. No obstante, nuestra mayor responsabilidad es asegurar la continuación efectiva de los servicios judiciales y el acceso de nuestros ciudadanos a la justicia. A ese fin, es necesario implantar medidas para controlar los gastos en la partida de la nómina, que representa el 70% del presupuesto operacional de la Rama Judicial, a la vez que se asegura al máximo la protección del empleo.

La Constitución del Estado Libre Asociado de Puerto Rico en la sección 7 del Artículo V faculta al Tribunal Supremo de Puerto Rico a adoptar las reglas para la administración de los Tribunales. En virtud del principio de independencia judicial, la Ley de Personal de la Rama Judicial, Ley Núm. 64 de 31 de mayo de 1973, según enmendada, 4 L.P.R.A. sec. 527 et seq., creó un sistema de personal autónomo para la Rama Judicial y facultó al Tribunal Supremo a adoptar reglas para regir dicho sistema. Al amparo de estos poderes, el Tribunal Supremo de Puerto Rico aprobó el Reglamento de la Administración del Sistema de Personal de la Rama Judicial que rige la administración y funcionamiento efectivo del personal de la Rama Judicial basado en el principio de mérito.

De conformidad con los poderes conferidos, en el Reglamento de la Administración del Sistema de Personal de la Rama Judicial se elimina el pago de un bono especial a aquellos empleados que no tienen derecho a pensión dispuesto en el inciso D del Artículo 10.9. Se enmienda el Artículo 18.1 para extender el término que tienen los empleados para disfrutar el tiempo compensatorio que acumulan por trabajar en exceso a la

jornada regular. Se enmienda el Artículo 19.1(c) para eliminar el pago adelantado de la licencia de vacaciones, limitar el máximo de tiempo para acumular por balance de la licencia de vacaciones y eliminar el pago del exceso de la licencia de vacaciones autorizada. Se enmienda el Artículo 19.9 para limitar el pago global de las licencias de vacaciones y enfermedad en el momento de liquidación al separarse del servicio público y al momento de que un empleado de la Rama Judicial se transfiere a otro sistema de personal en el gobierno. Por último se enmienda el Artículo 19.10 para disponer que el pago del exceso de licencia de enfermedad acumulados hasta el 31 de diciembre de 2014 se pagará en dos plazos, el primer pago será el 31 de marzo de 2015 el cual representará el 25% de lo adeudado y el segundo pago se realizará al 31 de octubre de 2015 el cual representará el 75% de lo adeudado. Además proveerá para que, a partir de la aprobación de esta Resolución, quede suspendida la acumulación de exceso de 90 días en el balance de licencia por enfermedad hasta tanto el Juez Presidente o la Jueza Presidenta certifique la disponibilidad de fondos. Por último se dispone que el exceso de licencia por enfermedad acumulado desde el 1 de enero de 2015 hasta la fecha de la aprobación de esta Resolución podrá utilizarse según dispone el Artículo 19.2 del Reglamento, en o antes del 31 de diciembre de 2015. Después de esa fecha se eliminará cualquier exceso no utilizado.

A tenor con ello, a continuación se incluye el texto final aprobado de las disposiciones afectadas con sus respectivos cambios o supresiones. El texto tachado será eliminado y el texto con énfasis será añadido.

I.      Se elimina el pago del Bono Especial para Empleados sin Derecho a Pensión provisto por el inciso (d) del Artículo 10.9 del Reglamento de la Administración del Sistema de Personal de la Rama Judicial, según enmendado. Conforme a ello, el Artículo 10.9 deberá contener los incisos ya dispuestos de la a) hasta el c) y se elimina el último inciso d).

"(10.9) Retribución Relacionada a Otros cambios de Personal

(a)   Descenso…

(b)   Traslado…

(c)   Interinato…

~~(d)   Bono especial para empleados sin derecho a pensión. Se concederá un bono especial a todo empleado, a~~

~~excepción de los jueces, que hayan trabajado en la Rama Judicial por un período mínimo de cinco (5) años, equivalente al cuarenta por ciento (40%) del sueldo que devengue a la fecha de su separación, más un dos por ciento (2%) por cada año de servicio sobre el mínimo de cinco (5) años. El derecho a recibir este beneficio estará condicionado a que: el empleado no tenga derecho a pensión del Sistema de Retiro del Estado Libre Asociado ni de otros sistemas similares, excluyendo Seguro Social Federal, y que no haya sido destituido de su puesto. En adición, el empleado recibirá todos los otros beneficios a que tenga derecho como servidor público~~."

II.    Se enmienda el primer párrafo del Artículo 18.1 del Reglamento de la Administración del Sistema de Personal de la Rama Judicial, según enmendado, para aumentar el tiempo, de 30 días a 60 días, concedido a los empleados para disfrutar el tiempo compensatorio acumulado en exceso a la jornada regular. Se enmienda el primer párrafo del Artículo 18.1 para que lea:

"18.1 – Tiempo compensatorio

Cuando por necesidades del servicio y a requerimiento del Juez Administrador o de la Jueza Administradora Regional, del Director Ejecutivo o de la Directora Ejecutiva Regional o del funcionario o de la funcionaria de la dependencia correspondiente, sea necesario que los empleados o las empleadas que no sean ejecutivos administrativos o profesionales, trabajen horas en exceso de la jornada semanal de 37.5 horas, en días feriados o en días de descanso, se les concederá tiempo compensatorio a razón de una vez y media del tiempo compensatorio trabajado en exceso, dentro de un período de ~~treinta (30)~~ *sesenta (60)* días a partir de la fecha de haberlo trabajado. En los casos en que se pueda conceder la compensación en tiempo compensatorio, el empleado o la empleada no tendrá la opción de rechazarlo para solicitar que se le compense en dinero. No

ER-2015-2

se requerirá el trabajo en exceso de la jornada regular a ningún empleado o empleada, cuando no se pueda conceder tiempo compensatorio, en el período antes señalado, a no ser que medien circunstancias extraordinarias que a juicio del Juez Administrador o de la Jueza Administradora Regional, del Director Ejecutivo o de la Directora Ejecutiva Regional, o del jefe o de la jefa de la dependencia justifiquen que se le paguen las horas extras que se requieran. En tales casos, el empleado o la empleada tendrá derecho a que se le paguen en efectivo las horas extras trabajadas a razón de tiempo y medio, a base del sueldo que devenga a la fecha que se tramita para pago.

...............

...............

...............

..............."".

III.     Se enmienda el inciso (C) del Artículo 19.1 del Reglamento de la Administración del Sistema de Personal de la Rama Judicial para eliminar la opción del pago adelantado de la licencia de vacaciones, para reducir de 90 días a 60 días el máximo de días para acumular la licencia de vacaciones, para eliminar el pago del exceso autorizado cuando el empleado no lo disfruta, previa solicitud de dispensa, durante los 6 meses posteriores al año natural en que fue acumulado y para eliminar el derecho a acreditar el exceso de la licencia de vacaciones para la deuda por contribuciones sobre ingresos que tuviera en el Departamento de Hacienda. El inciso (C) del Articulo 19.1 deberá leer:

"Artículo 19 – Licencias

(19.1) Licencias de vacaciones

A. Acumulación…

B. Plan de vacaciones…

C. Uso de la licencia ~~y pago del exceso autorizado~~

El personal podrá disfrutar de treinta (30) días de vacaciones en cada año

natural. Podrá concederse licencia de vacaciones en cualquier año natural en exceso de treinta (30) días laborables al año, aquellos que las tengan acumulados, hasta un máximo de ~~noventa (90)~~ *sesenta (60)* días en cualquier año natural. ~~A solicitud del empleado, cuanto éste disfrute su licencia de vacaciones, éstas se podrán pagar por anticipado al tipo regular de salario que devengare el empleado a la fecha de la solicitud.~~

En aquellos casos excepcionales, en que por circunstancias especiales de necesidades extraordinarias del servicio un empleado no haya podido disfrutar de licencia de vacaciones autorizada, el balance acumulado podrá exceder de los ~~noventa (90)~~ *sesenta (60)* días antes establecidos. Las circunstancias y necesidades del servicio se certificarán según se disponga en las normas que se establezcan. El empleado deberá disfrutar el exceso de licencia de vacaciones acumuladas al final de cada año natural en exceso del límite máximo autorizado de ~~noventa (90)~~ *sesenta (60)* días durante los seis (6) meses siguientes al año natural que refleja el exceso. *Si el empleado no disfruta de dicho exceso en el término establecido por la dispensa, el mismo se eliminará siempre y cuando se le hubiera permitido el disfrute de la licencia de vacaciones acumulada.* ~~Si transcurrido dicho plazo de seis (6) meses aún tuviere, por iguales circunstancias, licencia en exceso se pagarán las mismas antes del 31 de marzo del año siguiente. Cuando el(la) empleado(a) tenga exceso de licencias de vacaciones regulares podrá autorizar a la Oficina de Recursos Humanos de la Oficina de Administración de los Tribunales a transferir al Departamento de Hacienda cualquier suma por dicho concepto a fin de que se acredite la misma como pago parcial o total de cualquier deuda por contribución sobre ingresos que tuviese al momento de autorizar la transferencia.~~

D. Adelanto y Cesión de Licencia…".

ER-2015-2

IV. Se enmienda el Artículo 19.9 del Reglamento de la Administración del Sistema de Personal de la Rama Judicial para limitar, al momento de liquidación ante la separación del servicio público, el pago global de la licencia de vacaciones hasta 60 días, y el pago global de la licencia de enfermedad hasta 90 días a aquellos empleados que se jubilen o que se separen del servicio público habiendo servido por lo menos 10 años. Se elimina el pago de excesos no transferibles de empleados de la Rama Judicial que pasan a otros sistemas de personal en el gobierno. El Artículo 10.9 deberá leer:

(19.9) Pago global de Licencias de Vacaciones y Enfermedad al Separarse del Servicio

Todos los empleados, o sus sucesores en derecho, separados del servicio por cualquier causa, incluso la destitución, tendrán derecho a un pago global por la licencia de vacaciones ~~y licencia por enfermedad acumuladas~~ *acumulada* que ~~tuvieren~~ *tuviere* a su crédito a la fecha de su separación del servicio, *hasta un máximo de sesenta (60) días laborables. En algunas circunstancias podrán recibir, además, un pago global de hasta un máximo de noventa (90) días laborables por la licencia de enfermedad acumulada a su favor, cuando la separación del servicio es para acogerse a la jubilación si es participante de la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura o si a la fecha de su separación han prestado, por lo menos, diez (10) años de servicios ininterrumpidos en la Rama Judicial.*

~~Cuando el empleado que se separa del servicio tenga un balance de vacaciones en exceso de noventa (90) días, y ello haya sido autorizado según se dispone en el inciso (19.1) de este Reglamento, dicho balance se liquidará sin sujeción al límite de noventa (90) días.~~ Cuando el empleado que cesa pase a prestar servicios en alguna agencia, instrumentalidad o corporación pública de la Rama Ejecutiva, en la Rama Legislativa o en un gobierno municipal, se le transferirán los balances de licencia de vacaciones y por enfermedad que la entidad

acepte de conformidad con la reglamentación vigente en dicha entidad. ~~Si quedase algún exceso no transferible, el mismo se le liquidará en la forma acostumbrada para el pago de licencias~~.

V.        Se enmienda el Artículo 19.10 para disponer que el pago del exceso de licencia de enfermedad acumulados hasta el 31 de diciembre de 2014 se pagará en dos plazos, el primer pago será el 31 de marzo de 2015 el cual representará el 25% de lo adeudado y el segundo pago se realizará al 31 de octubre de 2015 el cual representará el 75% de lo adeudado. Se incluyen los incisos d) y e) en el primer párrafo del Artículo 19.10 y se elimina el último párrafo. El Articulo 19.10 deberá leer:

"(19.10)  Pago del Exceso Acumulado en Licencia por Enfermedad

………….

a)    ………….

b)    ………….

c)    ………….

d) *Para el pago del exceso de licencia de enfermedad acumulado hasta el 31 de diciembre de 2014, se establecen dos plazos de pago. El primero se efectuará el 31 de marzo de 2015 por el 25% del total a pagar y el segundo pago se realizará el 31 de octubre de 2015 por el 75% del total a pagar.*

e) *Se suspende la acumulación en exceso del máximo de noventa (90) días de balance de licencia de enfermedad a partir de la fecha de la vigencia de esta enmienda al Reglamento y hasta tanto el Juez Presidente o la Jueza Presidenta certifique la disponibilidad de fondos para emitir pagos al amparo de este Artículo. El exceso de licencia por enfermedad acumulado a partir del 1ro de enero de 2015 hasta la fecha de la aprobación de esta enmienda al Reglamento podrá*

ER-2015-2

> *utilizarse según dispone el Artículo 19.2 del Reglamento, en o antes del 31 de diciembre de 2015. Después de esta fecha se eliminará cualquier exceso no utilizado.*

> ………….

> ~~Todo(a) empleado(a) podrá autorizar al Área de Recursos Humanos de la Oficina de Administración de los Tribunales a transferir la totalidad o parte del pago que le corresponda por concepto de exceso de vacaciones por enfermedad al Departamento de Hacienda, a fin de que se le acredite como pago completo o parcial de cualquier deuda por contribución sobre ingresos que tuviere al momento de autorizar la transferencia~~.".

Esta Resolución tendrá vigencia inmediata.

Publíquese.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo.

La Jueza Presidenta señora Fiol Matta emite Voto Particular de Conformidad al cual se le une el Juez Asociado señor Feliberti Cintrón y la Jueza Asociada Oronoz Rodríguez. La Juez Asociada señora Rodríguez Rodríguez emite Voto Particular de Conformidad. La Jueza Asociada Oronoz Rodríguez emite Voto Particular de Conformidad al cual se le une el Juez Asociado señor Feliberti Cintrón.

La Jueza Asociada señora Pabón Charneco emite Voto Particular Disidente al cual se le unen los Jueces Asociados señor Kolthoff Caraballo y señor Rivera García. El Juez Asociado señor Estrella Martínez emite Voto Particular Disidente al cual se le unen la Jueza Asociada señora Pabón Charneco y los Jueces Asociados señor Kolthoff Caraballo y señor Rivera García.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Para eliminar el inciso (d)
del Artículo 10.9; enmendar
los Artículos 18.1, 19.1,
19.9 y 19.10 del Reglamento
de la Administración del
Sistema de Personal de la
Rama Judicial, según          ER-2015-2
enmendado.

Voto Particular de Conformidad emitido por la Jueza Presidenta SEÑORA FIOL MATTA al cual se le une el Juez Asociado señor Feliberti Cintrón y la Jueza Asociada Oronoz Rodríguez

En San Juan, Puerto Rico, a 9 de marzo de 2015.

I.

Cuando asumí el cargo de Jueza Presidenta del Tribunal Supremo de Puerto Rico lo hice entendiendo la gran responsabilidad que acarrea administrar uno de los tres poderes de gobierno del Estado Libre Asociado de Puerto Rico y con plena conciencia de la complejidad presupuestaria que enfrentaría la Rama Judicial ante la crisis fiscal que atravesaba el País. Aun así, acepté el reto de tomar el mando de nuestro sistema de justicia con el compromiso de velar por que los puertorriqueños y puertorriqueñas continuaran recibiendo los servicios judiciales de la forma más eficiente y efectiva, pero sobre todo con sensibilidad.

Me atreví a declarar este compromiso porque, entre otras cosas, sabía que la Rama Judicial contaba con el recurso humano de la más alta integridad y con el mayor sentido de responsabilidad. Desde el comienzo de mi administración, reconocí el valor de nuestros funcionarios, funcionarias, jueces y juezas como la herramienta esencial para que los tribunales del país puedan cumplir con su deber constitucional de resolver casos y controversias. Son ellos y ellas la columna vertebral de la Rama Judicial. La Resolución que aprobamos hoy no disminuye, ni un ápice, esa realidad. Por el contrario, es una medida tomada luego de muchos otros esfuerzos por conjurar nuestra precaria situación fiscal y con el objetivo de lograr la estabilidad fiscal y, por consiguiente, asegurar la estabilidad laboral.

La Resolución que hoy emite este Tribunal me impone la obligación de informar sobre la precaria situación presupuestaria que enfrenta la Rama Judicial, rendir cuentas sobre las decisiones administrativas implantadas, explicar las medidas que se adoptan al enmendar el Reglamento de la Administración de Personal de la Rama Judicial y, por último, pero no menos importante, delinear el camino que nos falta recorrer hacia la estabilidad.

## II.

Es harto conocido que el Pueblo de Puerto Rico enfrenta una crisis fiscal ante la degradación del crédito público. En atención a ello, las ramas Ejecutiva y

Legislativa del Gobierno de Puerto Rico implantaron la Ley Especial de Sostenibilidad Fiscal y Operacional del Gobierno del Estado Libre Asociado de Puerto Rico, Ley Núm. 66 de 17 de junio de 2014. En virtud de esta ley, se redujo el presupuesto de la Rama Judicial para el presente año fiscal en casi $54 millones de dólares, al congelarse la fórmula presupuestaria con la que se había estado trabajando desde la aprobación de la Ley Núm. 286-2002 y al aplicarse un porcentaje de reducción adicional de 7.4%.

La asignación de presupuesto mediante una fórmula es un mecanismo de avanzada implantado para concederle a la Rama Judicial la autonomía presupuestaria, uno de los elementos más efectivos para asegurar la independencia judicial en su vertiente administrativa y fortalecer la separación de poderes, pilar de nuestro sistema republicano de Gobierno. Durante la pasada década, gracias a la autonomía presupuestaria, la Rama Judicial pudo planificar sus operaciones e iniciativas sin intervención de las otras ramas constitucionales de gobierno y sin déficit presupuestario.

Conforme a la Ley Núm. 286-2002, el presupuesto que le correspondía a la Rama Judicial por concepto de fórmula para el año fiscal 2014-2015 era de aproximadamente $380,015,000. Además, la Rama Judicial recibiría aproximadamente unos $15 millones adicionales provenientes de la cancelación de aranceles y fondos federales. Al

sumarse éstos a lo que le correspondería por fórmula, se había proyectado una partida total de $395,015,000 en recursos para el presente año fiscal. Conforme a esto, la Rama Judicial presupuestó en gastos operacionales cerca de $390,947,000, suficientes para cubrir todos los compromisos contraídos.

La Ley 66-2014 alteró este escenario. Suspendió la fórmula presupuestaria antes descrita, congeló el presupuesto y aplicó el porciento de reducción, resultando en una asignación de $341,249,000. Esto equivale a una reducción de casi $54 millones o un 14% de lo que se había proyectado bajo las leyes puestas en suspenso por la Ley 66-2014. La capacidad de la Rama Judicial para cumplir con los proyectos encaminados y con las obligaciones contraídas se vio seriamente restringida. Evidentemente, el presupuesto asignado no fue suficiente para cubrir el pago de los compromisos presupuestarios, según estos fueron proyectados.

III.

El cuadro presupuestario antes descrito requirió tomar medidas estrictas para ahorrar y controlar los gastos operacionales de la Rama Judicial para el presente año fiscal. En una orden administrativa de 7 de julio de 2014 requerí acción inmediata para ponerlas en vigor de manera que tuvieran efecto en el plazo más breve posible. También ordené la evaluación de todas las medidas posibles que resultaran en el uso prudente y eficiente de nuestros

recursos para maximizar su rendimiento. Las medidas evaluadas e implantadas a partir de esta Orden fueron predicadas en varios criterios, siendo los principales que se continúe brindando servicio de excelencia a nuestra ciudadanía y se asegure al máximo posible la protección de los empleos y los derechos correspondientes a nuestro recurso humano.

Cónsono con ello, la Oficina de Administración de los Tribunales (OAT) diseñó un plan inicial de ahorro. Entre las primeras acciones tomadas, se convocó a un comité evaluador para estudiar la necesidad de los servicios contratados a profesionales y entidades externas, tomando en consideración el apoyo requerido por la función judicial. Se impartió la instrucción de reducir el gasto en servicios contratados. En cumplimiento de lo requerido se redujeron las cuantías en los contratos de servicios de seguridad, representación legal y contabilidad, relaciones públicas y prensa y servicios médicos, psicológicos y de trabajo social. Además, se logró reducir los cánones de treinta y un edificios arrendados.

Por otro lado, entre otras medidas, se canceló la contratación de puestos transitorios, se congelaron los puestos no esenciales y se redujeron los contratos por servicios y materiales. Además, se renegociaron los cánones de arrendamiento de los locales donde operan muchos de los tribunales y se trasladaron las operaciones de once salas

del Tribunal de Primera Instancia a otros centros judiciales. No se renovó el millonario contrato de arrendamiento de los edificios del Tribunal de Apelaciones y de la OAT, se reorganizó el organigrama de la OAT y se ordenaron cierres parciales de las operaciones judiciales durante épocas festivas. La implantación de estas medidas ha sido muy efectiva y ha generado un ahorro significativo de cerca de $9 millones de dólares al presente. Se ha calculado que al concluir el año fiscal estas medidas generarán un ahorro total aproximado de $12 millones de dólares.

El cierre de once salas de los Tribunales de Primera Instancia, a saber, Cataño, Naranjito, Maunabo, Naguabo, Moca, Las Marías, Jayuya, Peñuelas, Aguas Buenas, Cidra y Gurabo, sin duda ha incidido en la operación de los tribunales. Además, hemos tenido que cancelar el proyecto de construcción de un nuevo Centro Judicial en Aibonito a pesar de que las condiciones del Centro Judicial actual no son las mejores. Ha sido necesario también reducir el pago de alimentos a los confinados y testigos y cancelar proyectos de servicios tales como Teletribunales, que ofrecía a la ciudadanía información sobre los casos a través del teléfono, y En Contacto, que permitía comunicarse mediante mensajes de textos con los empleados de la Rama Judicial en casos de emergencias. Así también se suspendió el desarrollo del emblemático y costoso proyecto de presentación electrónica

de casos, Sistema Unificado de Manejo y Administración de Casos, conocido por sus siglas como SUMAC. No hemos terminado de examinar los reglones administrativos de arrendamientos, servicios y utilidades. Por el contrario, continuaremos evaluándolos junto a otros renglones, como la contratación en el área de tecnologías, con miras a generar mayores ahorros.

Sin embargo, estas partidas, en su totalidad, representan tan sólo el 30% del presupuesto operacional de la Rama Judicial. El grueso del presupuesto operacional de la Rama Judicial, un 70%, está dirigido hacia la nómina. Ésta comprende el pago del salario de los jueces, juezas, funcionarios y funcionarias y los beneficios marginales reconocidos por reglamentos, órdenes administrativas y cartas circulares. En cuanto a esta partida, hasta el momento, se ha reducido en un 11% la plantilla del personal de la Rama mediante la congelación de plazas que se desocupan por renuncia o jubilación y la reducción en puestos transitorios. Además, se suspendió el pago de diferenciales por realizar labores adicionales, se redujo la acumulación de horas extras, se congeló la concesión de pasos por méritos y aumentos salariales y se eliminó el pago de las cuotas y membresías profesionales. Todo esto ha representado un ahorro significativo.

No obstante, a pesar de todos nuestros esfuerzos, las medidas antes descritas no han sido suficientes para atajar

el déficit fiscal. Por eso, hay que hacer más, teniendo siempre presente nuestra obligación de continuar proveyendo efectivamente nuestros servicios a la ciudadanía y protegiendo al máximo posible los empleos y derechos de los funcionarios y funcionarias de la Rama Judicial. De igual forma confiamos que las ramas ejecutiva y legislativa asuman su responsabilidad de no permitir que la tercera rama de gobierno, el fiel de la balanza de nuestro sistema republicano de gobierno, deje de ser efectiva en el cumplimiento de su misión constitucional.

IV.

Por los pasados ocho meses hemos evaluado e implantando numerosas medidas para atender la crisis. Durante las pasadas tres semanas, el Tribunal Supremo de Puerto Rico se reunió en Pleno extraordinario en dos ocasiones para discutir la precaria situación fiscal de la Rama Judicial, los detalles sobre los gastos esenciales y no esenciales para la operación de los tribunales, las medidas de ahorros y control de gastos implantadas y el efecto del déficit presupuestario en los proyectos de acceso a la justicia y en nuestra facultad para cumplir con las obligaciones contraídas. Demás está decir, que la discusión estuvo siempre centrada en la prioridad de mantener la continuidad de los servicios judiciales, proteger el acceso de los ciudadanos a los tribunales y asegurar la estabilidad laboral de nuestros buenos funcionarios y funcionarias. Se evaluaron distintas

alternativas, pero ante la inminencia de tener que incumplir con nuestras obligaciones, específicamente hacia nuestros empleados, fue necesario implantar las medidas adoptadas en la Resolución del Tribunal que hoy se certifica.

De esta forma, en el día de hoy una mayoría de este Tribunal Supremo se une al esfuerzo de dotar a la Rama Judicial de mayor estabilidad económica, salvaguardar la continuación de los servicios judiciales de forma efectiva y eficiente, teniendo presente la mayor protección a la estabilidad laboral. Estas enmiendas, que tienen vigencia a partir de hoy, pretenden controlar los gastos de la Rama Judicial en cuanto a los beneficios marginales, no esenciales, de los funcionarios y funcionarias de la Rama Judicial.

Las enmiendas al Reglamento adoptadas en esta Resolución se concentran en tres asuntos particulares, a saber, extender el término para el disfrute del tiempo compensatorio acumulado, regular la acumulación y pago de excesos por concepto de las licencias de vacaciones y enfermedad y eliminar un bono especial para empleados y empleadas que no tienen derecho a una pensión por jubilación.

Nuestros empleados y empleadas tienen derecho a disfrutar el tiempo compensatorio que acumulan por trabajar en exceso a la jornada regular. La enmienda al Artículo

18.1 extiende ese término de treinta a sesenta días. De esta forma, los empleados que hayan acumulado tiempo compensatorio por necesidades del servicio tendrán mayor oportunidad para disfrutar lo acumulado y se reducirán los pagos de horas extras por falta de tiempo suficiente para disfrutar el tiempo compensatorio.

La enmienda al Artículo 19.1(c) elimina el pago adelantado de la licencia de vacaciones, reduce el máximo de tiempo que se puede acumular por concepto de balance de la licencia de vacaciones de noventa (90) a sesenta (60) días y elimina el pago del exceso de la licencia de vacaciones autorizada. Esta enmienda permite disfrutar el exceso acumulado durante el año natural y además mantiene vigente la oportunidad de solicitar dispensa para su disfrute al 31 de diciembre de cada año si la persona, por necesidades de servicio, no pudo disfrutar de la licencia. No obstante, se elimina el pago del exceso autorizado al final del plazo de los 6 meses concedido en la dispensa.

También se enmienda el Artículo 19.9 para limitar el pago global de las licencias de vacaciones y enfermedad al momento de liquidación cuando el empleado o empleada se separa del servicio público y cuando el empleado se transfiere a otro sistema de personal en el gobierno. La nueva norma dispone que el pago global de la licencia de vacaciones al momento de la liquidación será hasta un máximo de 60 días. La liquidación de hasta un máximo de 90 días de licencia de enfermedad será autorizada si la

separación del servicio tiene como propósito acogerse a la jubilación a través de la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura o si la persona ha prestado servicio público durante diez (10) años o más a la fecha de la separación.

El Artículo 19.10 se enmienda para disponer que el pago del exceso de licencia de enfermedad acumulado hasta el 31 de diciembre de 2014 se pagará en dos plazos. El primer pago, que representa el 25% de lo adeudado, se hará el 31 de marzo de 2015; el 75% restante de lo adeudado se pagará al 31 de octubre de 2015. Se dispone, además, que a partir de la aprobación de la Resolución, quedará suspendida la acumulación de licencia por enfermedad en exceso de noventa (90) días, hasta tanto el Juez Presidente o la Jueza Presidenta certifique la disponibilidad de fondos. El exceso de licencia por enfermedad acumulado desde el 1 de enero de 2015 hasta la fecha de la aprobación de esta Resolución podrá utilizarse según dispone el Artículo 19.2 del Reglamento, en o antes del 31 de diciembre de 2015. Después de esa fecha se eliminará cualquier exceso no utilizado.

Por último, se deroga el inciso D del Artículo 10.9 para eliminar el pago de un bono especial a aquellos empleados que no tienen derecho a pensión. Esta disposición, en términos prácticos, no se ha utilizado desde hace mucho más de una década.

Las medidas tomadas hoy afectan no sólo a nuestros funcionarios y funcionarias, sino a los jueces y juezas del sistema. Con la implantación de estas medidas, que inciden únicamente en beneficios marginales no esenciales de nuestros empleados y jueces, se obtendrá un ahorro significativo de casi $10 millones de dólares. Esto contribuirá significativamente a garantizar la continuación de los servicios que ofrecemos a la ciudadanía.

V.

La Rama Judicial ha tomado todas las acciones posibles y ha auscultado todas las opciones a nuestro alcance hasta este momento. Lamentablemente, ante un presupuesto operacional que está comprometido principalmente en renglones relacionados con la nómina, y tras haber realizado los mayores esfuerzos para identificar otras medidas de control de gastos, nos vemos obligados a reducir los gastos en beneficios concedidos a los funcionarios y funcionarias y a los jueces y juezas del sistema. No obstante, reitero nuevamente que continuaremos con la agresiva renegociación de contratos de arrendamientos, el traslado de otras salas del Tribunal de Primera Instancia, el cierre temporero de operaciones judiciales en distintas fechas del año y la reestructuración de operaciones en la OAT para lograr mayor eficiencia. Debemos tener claro que nuestra responsabilidad ineludible es hacia el Pueblo, que requiere y merece servicios eficientes y de calidad. Ese es mi compromiso, el

de mis compañeros Jueces Asociados y Juezas Asociadas y el de todos los servidores y las servidoras de esta Rama Judicial.

Con la misma honestidad que les he presentado nuestra situación, puedo afirmar que se ha hecho todo lo posible para intervenir lo menos posible con nuestro recurso humano. Con un alto grado de sensibilidad, este Tribunal modificó únicamente el mínimo necesario de los beneficios. Además, la Rama Judicial continúa evaluando otras alternativas que permitan garantizar el cumplimiento con nuestra responsabilidad constitucional. Estos esfuerzos van dirigidos a que todos y todas aportemos por igual.

Una de mis principales prioridades en la administración de la Rama Judicial ha sido garantizar la transparencia de las operaciones y de la función judicial. Por eso, he sido franca en cuanto a la divulgación responsable y oportuna de los aspectos administrativos de la Rama Judicial, incluyendo el aspecto económico. Este estilo conlleva aceptar, con respeto y reflexión, las posturas disidentes sobre las decisiones difíciles que se han tomado y que habrán de tomarse.

Sin embargo, debo aclarar, algunos datos. Aun cuando los contratos de servicios profesionales se han reducido significativamente como resultado del análisis y recomendaciones del comité evaluador, y se ha controlado el gasto de los mismos durante el presente año, no es posible

eliminarlos del todo sin afectar la función judicial. Por ejemplo, los contratos de servicios de trabajo social, consejeros y psicólogos se requieren para dar servicios en los asuntos de familia y menores, así como en la administración de nuestro recurso humano. Aquí se incluye también el servicio profesional de siquiatras que son necesarios en diversos procesos judiciales. Este año, la contratación de servicios legales incluye a los profesionales que realizan las investigaciones sobre las quejas contra jueces y juezas, a través de la recién creada Unidad Especializada de Investigación. Esta inversión es necesaria para garantizar la legitimidad de nuestro sistema judicial y fue requerida por la ciudadanía. Por último, el reglón de asuntos de oficial de prensa no se limita a la asesoría de relacionistas públicos, sino que incluye los pagos por edictos requeridos por ley y la compra de espacios en los medios para la educación a la ciudadanía sobre los servicios que ofrecemos.

Durante toda mi carrera en el servicio público he sido consciente de la necesidad de proteger a los menos afortunados y a los asalariados. He reconocido que el trabajo tiene una importancia y significado para la persona que va más allá del aspecto económico y se adentra en la salud y en el bienestar físico y mental.[1] Este Tribunal

---

[1] En <u>Orsini García v. Secretario de Hacienda</u>, 177 D.P.R. 596, 622 (2009) expresé que el trabajo tiene una función social trascendental tanto en el ámbito individual como en el colectivo ya que contiene un hondo significado ético mediante el cual la persona aporta al bien común y se

también ha reconocido la función social transcendental del trabajo, tanto en el ámbito individual como en su aportación al bien común. Soy plenamente consciente, y lamento, el impacto que estas medidas puedan tener en las vidas de nuestros compañeros. Al aprobar la Resolución que hoy emite esta Tribunal, me mueve el convencimiento de que el trabajo de los servidores de este Rama Judicial es una fuerza vital que les compele a superarse, fomentar y perseguir el bien común y a ser parte importante, vital, de nuestra comunidad jurídica. Precisamente porque buscamos defender y proteger sus trabajos en medio de la crisis fiscal que aqueja a la Rama Judicial, es que se emite hoy, la Resolución que provoca este voto de conformidad.

Liana Fiol Matta
Jueza Presidenta

---

autorealiza. Así también, en Whittenburg v. Colegio Nuestra Señora del Carmen, que el "valor social del trabajo como elemento central de la vida en sociedad", 182 DPR 937, 949 (2011).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| *In re*:<br><br>Aprobación de los Derechos Arancelarios pagaderos a los(as) Secretarios(as), los(as) Alguaciles(as) y a otro personal de la Rama Judicial que ejerce funciones de recaudación<br><br>Para eliminar el inciso (d) del Artículo 10.9; enmendar los Artículos 18.1, 19.1, 19.9 y 19.10 del Reglamento de la Administración del Sistema de Personal de la Rama Judicial, según enmendado | |

Voto Particular de Conformidad emitido por la Juez Asociada señora Rodríguez Rodríguez al que se une la Jueza Asociada Oronoz Rodríguez

San Juan, Puerto Rico, a 9 de marzo de 2015

No cabe duda de que el País se encuentra sumido en una profunda crisis económica, cuyas consecuencias nos obligan, *a todos*, a repensar a cabalidad los arreglos institucionales prevalecientes. Así, ante problemas fiscales de gran envergadura, que amenazan con trastocar el funcionamiento e integridad de la Rama Judicial en su totalidad, se precisan propuestas concretas, serias, responsables, que velen por el adecuado funcionamiento de los tribunales del País. Es menester, pues, abordar el asunto en su justa complejidad. Es decir, a este Tribunal le compete no sólo velar por el acceso a los foros judiciales -lo cual es esencial-, sino también porque éstos operen de manera adecuada y eficiente, y estén habilitados para llevar a cabo su función

primordial en nuestra sociedad democrática: impartir justicia.

Por entender que las medidas adoptadas por una mayoría de este Tribunal, sirven para encaminar soluciones que propenden a solventar los descalabros fiscales que ha sufrido la Rama Judicial y son además el producto de un esfuerzo responsable, ponderado y concienzudo de sus prerrogativas reglamentarias, estoy CONFORME con las Resoluciones que hoy se certifican enmendando el Reglamento de la Administración del Sistema de Personal de la Rama Judicial y estableciendo los derechos arancelarios.

Sin embargo, ante las desafortunadas críticas de la disidencia, conviene matizar algunas aseveraciones que se formulan.

Contrario a lo aseverado, la adopción de los derechos arancelarios avalados por una mayoría de este Tribunal, es el resultado de un minucioso estudio de las realidades socioeconómicas del País, el cual, además, ha sido realizado sin perder de vista las consideraciones de política pública que propenden a asegurar la accesibilidad de la ciudadanía a las instancias judiciales y que éstas presten servicios de manera equitativa y sensible. *Véase* Oficina de la Administración de los Tribunales, *Informe técnico sobre los nuevos derechos de aranceles por el trámite de acciones civiles en el Tribunal General de Justicia* (17 de febrero de

2015) (elaborado en virtud de la Ley Núm. 47 de 30 julio de 2009, según enmendada). Intimar lo contrario es faltarle a la verdad. Así, el aumento a los derechos arancelarios no responde al mero capricho de una mayoría de este Tribunal, sino que fue el resultado de un ajuste equitativo en función de la tasa de inflación. *Véase id.* en la pág. 5.

De otra parte, es menester señalar que la aprobación de los derechos arancelarios en cuestión **no trastoca** las exenciones que procuran facilitar el acceso a los tribunales, en atención a determinadas consideraciones de política pública. Por ejemplo, se eximirá del pago de aranceles en pleitos civiles en que se reclamen exclusivamente alimentos, por la primera alegación de la parte demandada en pleitos de expropiación forzosa y por peticiones de *habeas corpus*. Además, se exime del pago de aranceles la celebración de bodas, cuando se trate de personas indigentes. Añádase a lo anterior el derecho estatutario a litigar *in forma pauperis* –que no se verá afectado por el aumento de los derechos arancelarios–, el cual procura que los ciudadanos más desaventajados puedan, efectivamente, vindicar sus derechos en los foros judiciales del País. *Véase* 32 L.P.R.A. sec. 1482; *Gran Vista I v. Gutierrez y otros*, 170 D.P.R. 174, 191 (2007) ("Los estatutos aprobados para permitir la litigación *in forma pauperis*

cumplen el propósito de abrir las puertas de los tribunales a todos los ciudadanos, no empece la incapacidad económica de algunos para sufragar los costos asociados a un litigio".). No cabe duda que dicho derecho ha sido plenamente reconocido en las diversas instancias que conforman nuestro sistema judicial.[2] Lo cierto es que la disidencia no propone alternativas reales y concretas para atajar la grave crisis fiscal que sufre la Rama Judicial. E igual de cierto es que no hay soluciones cómodas para problemas complejos. Es hora de tener una cita con la realidad.[3] La disidencia, más que nada, se enfrasca en un soflama populista en el que los expositores dan la impresión de que solo interesan alzarse como redentores y protectores de los "mas débiles", pues no proponen ni una medida concreta para enfrentar los problemas reales que nos aquejan y lograr, de esta forma, aminorar el "perjuicio" que alegan intentan vindicar. *En momentos difíciles, de inusitada complejidad, la retórica no basta.* Se precisan, pues,

---

[2] *Véase* Reglas para la administración del Tribunal de Primera Instancia del Estado Libre Asociado de Puerto Rico de 1999 (Agosto 2009), R. 18; Reglamento del Tribunal de Apelaciones, R. 78. *Cf.* Reglamento del Tribunal Supremo de Puerto Rico, R. 47. En lo que respecta a la Regla 47 de este Tribunal, conviene señalar que ésta —al disponer para traducciones *in forma pauperis*— bien pudiera mitigar los costos de traducción para las personas con escasos recursos económicos que pretendan revisar sentencias de este foro ante el Tribunal Supremo de Estados Unidos.
[3] Wolfgang Schäuble, Ministro de Finanzas de la República Federal de Alemania.

*personas* dispuestas a tomar *medidas serias*, si bien con suma sensibilidad y de manera equitativa.

No puedo concluir sin expresar mi profundo lamento y completo rechazo a la práctica que se ha entronizado en este Tribunal en tiempos recientes, de filtrar a destiempo información y documentación confidencial de la labor de los jueces y de este Tribunal. Esta es una táctica propia del mundo de la política partidista, donde se utiliza como mecanismo para ejercer presión pública, o para deslegitimar al opositor o granjearse el favor de terceros. Favor que, por la naturaleza de cómo se adquiere, es necesariamente efímero. Así, cabría preguntarse en este caso, a qué responde semejante divulgación. Ello, sin lugar a dudas, atenta contra la dignidad de la función judicial, en la medida en que, como poco, crea la impresión de que se pretende influenciar la toma de decisiones de este Tribunal a través de presiones indebidas. Y es que penosamente, no se tiene conciencia de que "el secreto de las deliberaciones y las votaciones de los jueces es indispensable a cualquier tribunal colegiado", y se es indiferente al efecto perjudicial que tal proceder tiene sobre esta Institución. R. Serrano Geyls, *Derecho Constitucional de Estados Unidos y Puerto Rico*, vol. 1, 1997, pág. 67. Es una lástima que esa "poderosa tradición de secreto judicial" que se respetaba

rigurosamente en el pasado, se eche a un lado en el afán de ganar *ventajerías* momentáneas.  *Id.*, pág. 69.

Por todo lo anterior, estoy CONFORME con las Resoluciones adoptadas por la mayoría de este Tribunal, las cuales constituyen un primer paso en el arduo proceso de administrar la Rama Judicial conforme a la situación económica que atraviesa el País, sin perder de vista los principios que informan la labor que nos ha sido encomendada.


Anabelle Rodríguez Rodríguez
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Aprobación de los Derechos Arancelarios pagaderos a los(as) Secretarios(as), los(as) Alguaciles(as) y a otro personal de la Rama Judicial que ejerce funciones de recaudación | ER-2015-1 |
| Para eliminar el inciso (d) del Artículo 10.9; enmendar los Artículos 18.1, 19.1, 19.9 y 19.10 del Reglamento de la Administración del Sistema de Personal de la Rama Judicial, según enmendado | ER-2015-2 |

Voto Particular de Conformidad emitido por la Jueza Asociada ORONOZ RODRÍGUEZ, al cual se une el Juez Asociado señor Feliberti Cintrón

En San Juan, Puerto Rico, a 9 de marzo de 2015

La difícil situación económica que aqueja al País y de la cual la Rama Judicial no está exenta, exige que tomemos medidas urgentes para evitar el colapso operacional de nuestro sistema de justicia. Esta coyuntura requiere sopesar diversas alternativas y tomar las decisiones responsables para minimizar el traslado de más tribunales y evitar el despido de empleados. Por ello estoy conforme con la Resolución que antecede.

En el último año, el presupuesto de la Rama Judicial sufrió un recorte significativo. Como consecuencia se han tomado decisiones responsables para reducir gastos y

viabilizar la administración de la justicia. Por ejemplo, se tomaron medidas administrativas para disminuir costos operacionales, se redujeron significativamente los contratos por servicios, se cancelaron y renegociaron contratos de arrendamiento, se concretó la mudanza de la Oficina de Administración de los Tribunales y del Tribunal de Apelaciones, así como el traslado de las operaciones de algunos tribunales a otros.[4] Lo anterior, sin embargo, no es suficiente para contrarrestar el impacto ocasionado por la reducción presupuestaria. Nos corresponde hacer mucho más, actuando valientemente, con sensibilidad y a tono con nuestra ineludible realidad fiscal.

Un análisis desapasionado y objetivo del problema revela que no hay una solución perfecta; sino que estamos obligados a mirar el macro de nuestros gastos e ingresos para tomar las decisiones responsables que tenemos que tomar. Estas decisiones no se toman a la ligera ni mucho menos con indiferencia hacia los distintos sectores de nuestra sociedad y sus particulares reclamos. Todo lo contrario. Precisamente porque somos conscientes de los problemas económicos que a todas y todos nos han afectado es que actuamos responsablemente para atajar a tiempo el déficit presupuestario. Nuestras actuaciones van dirigidas a mantener abierto el mayor número de

---

[4] La revisión y renegociación de contratos de arrendamiento y de otros servicios son medidas de largo alcance que continuarán llevándose a cabo con el fin de reducir costos y balancear nuestro presupuesto.

tribunales, garantizar el acceso a la justicia -que nunca dejará de ser una prioridad de este Tribunal- y salvaguardar a toda costa el empleo de nuestros funcionarios.

Estoy convencida que ante la complejidad de los problemas que tenemos que enfrentar, la mera retórica no es una herramienta práctica. Le hacemos un flaco servicio al País si ignoramos las decisiones forzosas que se tienen que tomar en pro de la ciudadanía y de los empleados de la Rama Judicial.

Estoy igualmente convencida que la decisión que hoy toma una mayoría de este Tribunal no es arbitraria, sino producto de meticuloso análisis. Esta representa una determinación responsable en el continuo reto de proveer una justicia efectiva a pesar de contar con menos recursos económicos. Bajo ningún concepto equivale -como aseveran los compañeros Jueces y Juezas Asociadas en sus Opiniones Disidentes- a la claudicación del acceso a la justicia. Por el contrario, es una actuación responsable cuyo fin es, precisamente, perpetuar dicho acceso. No hay lugar para este tipo de juicio cuando la Rama Judicial ha fortalecido contundentemente en los pasados años programas dirigidos a proveer mayor acceso a la justicia.[5]

---

[5] Véase Orden Administrativa de 22 de enero de 2014 sobre Creación de la Comisión Asesora de Acceso a la Justicia, OAJP-2014-175. A modo de ejemplo, se establecieron *Salas Especializadas en Casos de Violencia Doméstica*, un *Sistema de Órdenes de Protección Automatizadas*, el *Proyecto Justicia para la Niñez*, el *Programa de Litigantes por*

Asimismo, debe quedar claro que el esquema diseñado para que personas de escasos recursos económicos puedan acudir a nuestros tribunales para hacer valer sus derechos continúa vigente en toda su extensión. Esto es, cualquier parte en un pleito puede presentar ante el tribunal una solicitud en la cual acredite su condición económica y, de aprobarse, se le exime del pago de los correspondientes aranceles y derechos. Esto aplica también a toda persona representada por un abogado de oficio o una entidad sin fines de lucro.[6]

La complejidad del problema de insuficiencia de recursos que enfrenta la Rama Judicial nos posiciona en un dificultoso, pero ineludible, proceso de evaluación a los fines de equilibrar nuestro presupuesto. Las medidas tomadas abarcan los diversos componentes de dicho presupuesto y están pensadas para proteger nuestro sistema judicial, el acceso a la justicia y el trabajo de todas y todos los que formamos parte de esta Rama.

En nada favorece que nosotros, las Juezas y Jueces del Tribunal Supremo de Puerto Rico, utilicemos esta coyuntura para sembrar dudas infundadas sobre el esfuerzo concienzudo que se está llevando a cabo. Durante las reuniones que antecedieron a la presente Resolución se

---

*Derecho Propio* y el *Programa de Salones Especializados en Casos de Sustancias Controladas*.

[6] En atención a lo expresado por el compañero Juez Asociado señor Estrella Martínez en su Voto Particular Disidente, considero importante precisar que en nuestro ordenamiento jurídico las reclamaciones laborales al amparo de la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 LPRA sec. 3132, están exentas del pago de derechos arancelarios.

evaluaron diversas proposiciones y alternativas. Claro que se descartaron algunas, especialmente las que proponían cursos de acción irresponsables y contrarios a derecho. Las decisiones que al final se han tomado fueron objeto de estudio e informes, y se calibraron con cuidado para actuar responsablemente y proteger el derecho de nuestro Pueblo a contar con un sistema de tribunales funcional y efectivo.

No hubo ni hay espacio para la improvisación ingenua. Este no es el momento para mirar al pasado y ponerse a pensar sobre la conveniencia de decisiones que hace mucho fueron tomadas. Tampoco es el tiempo para discursos populistas y genéricos que se limiten a criticar sin proponer medidas concretas, realistas y válidas. Después de todo, si la preocupación sobre el acceso a la justicia es auténtica, se debe hacer más que hablar sobre ella.

El acceso a la justicia -ese derecho de todas las personas en una sociedad democrática a acudir a los tribunales, presentar su reclamo en igualdad de condiciones y obtener el remedio que en derecho proceda- requiere para su implementación de un ejercicio administrativo que lo haga posible. Es decir, de decisiones administrativas que organicen eficientemente los recursos económicos de manera que los tribunales operen con personal capacitado y suficiente, con las facilidades indispensables para atender las

particularidades de los distintos casos y con los fondos necesarios para garantizar que todos nuestros ciudadanos puedan beneficiarse del sistema. Es ahí donde se mezclan el ideal y la acción. La decisión que hoy toma una mayoría de este Tribunal está fundada en esa dualidad. Por eso, estamos convencidos de que ante la precariedad económica que atravesamos, la toma de decisiones como las actuales nos encamina en la dirección correcta para de verdad salvaguardar principios esenciales de justicia y equidad.

Como una de las tres Ramas del Estado Libre Asociado de Puerto Rico, nos corresponde hacer los ajustes para preservar la integridad de los servicios que ofrecemos y cumplir nuestro deber constitucional. Sería iluso y temerario de nuestra parte limitarnos a gestionar que no se recorte nuestro presupuesto; más aún esperar hasta mayo cuando se apruebe el presupuesto del próximo año fiscal para constatar lo que ya se sabe: que hay y habrá un desfase en el presupuesto de la Rama Judicial.

Hablar ahora de lo que se debió hacer ante el recorte presupuestario del año pasado no resuelve el problema. La pregunta que hay que atender es: ¿qué vamos a hacer para balancear el déficit actual y para atender el déficit que habrá en el presupuesto del próximo año fiscal? Ninguna de las Opiniones Disidentes ofrece una solución real y concreta de cómo resolver el problema. Cabe señalar que los cuatro Jueces que hoy disienten conocen a cabalidad

el problema presupuestario que existe desde el año pasado. No obstante, no han sabido preocuparse y mucho menos proponer un curso de acción válido que ataje el problema. Y es que siempre es más fácil criticar que proponer o resolver.

Administrar juiciosa y valientemente es atender el desfase actual, anticipar los problemas que vendrán y actuar responsablemente para tratar de resolverlos. Por el contrario, hablar de supuestas "acciones legales contra las Ramas que provocaron esta crisis", simplificar la discusión a una trasnochada dicotomía entre "poderosos" y "débiles", y tergiversar la razón de las medidas que se están tomando para pintarnos como conspiradores en contra de nuestro Pueblo no es más que escudarse sumisamente tras la quimera y la demagogia.

En síntesis, las decisiones que hoy adopta una mayoría de este Tribunal son el resultado de un proceso de reflexión y análisis para mantener la efectividad de nuestro sistema judicial ante las limitaciones económicas que ya sabemos. Van dirigidas a evitar el cierre de tribunales y el despido de empleados, a continuar proveyendo los recursos que facilitan la tramitación de controversias, así como a preservar el esquema que permite que litigantes de escasos medios económicos puedan hacer valer sus derechos, entre otros servicios más.

Esta compleja pero imperiosa labor la realizamos de cara a la realidad, con responsabilidad y compromiso hacia nuestro Pueblo. Así, estoy convencida de que lo que sí incentiva la incredulidad son las meras palabras sin respaldo, las soluciones llanas y las actuaciones imprudentes. Por el contrario, la exposición honesta de los problemas y de las medidas difíciles pero necesarias para aplacarlos, acompañado de la actuación comprometida y esforzada para hacerlas cumplir, enlaza voluntades y alimenta la confianza.

Por último, resulta sumamente preocupante que miembros de este Tribunal divulguen a los medios de comunicación documentos internos y confidenciales que aún no se han certificado.[7] Si bien la práctica de librar sus batallas en los medios se ha tornado en la norma para algunos, no deja de ser alarmante y denota falta de seriedad, integridad, madurez y circunspección.

Maite D. Oronoz Rodríguez
Jueza Asociada

---

[7] La información divulgada a los medios se le entregó a los Jueces y Juezas de este Tribunal en sobres sellados y marcados "confidencial". Cualquier divulgación es pues responsabilidad de los miembros del Pleno.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:<br><br>Para eliminar el inciso (d) del Artículo 10.9; enmendar los Artículos 18.1, 19.1, 19.9 y 19.10 del Reglamento de la Administración del Sistema de Personal de la Rama Judicial, según enmendado. | ER-2015-2 | |

Voto Particular Disidente emitido por la Jueza Asociada señora Pabón Charneco, al cual se unieron los Jueces Asociados señores Kolthoff Caraballo y Rivera García.

En San Juan, Puerto Rico, a 9 de marzo de 2015.

> *"No matter how far you have gone on a wrong road, turn back."*
> *-Proverbio turco-*

No hay razón para suavizar las verdaderas palabras que merece la Resolución que se certifica hoy: vergüenza institucional. Otra vez se afectan los que menos se lo merecen y las malas decisiones que se tomaron en los pasillos del Poder se pagan en los lugares humildes de nuestra Rama. En mi disenso de la Resolución que solicita un aumento en los aranceles de los tribunales de Puerto Rico expresé que "nubes de tormenta se asoman en el horizonte. Solo espero que exista todavía una fibra moral

fuerte en el seno de este Tribunal para enfrentarlas."[8] Resulta que las nubes no estaban tan al horizonte, sino que se ha formado un huracán en nuestra Rama Judicial. ¿La fibra moral que se necesitaba para combatirlo? Inexistente.

Ante el atropello que se anuncia hoy, no queda más que DISENTIR con todas las energías que me quedan.

I

La Resolución que antecede es secuela del mismo procedimiento que describí en mi Voto Particular Disidente de *In re: Aprobación de los Derechos Arancelarios pagaderos a los(as) Secretarios(as), los(as) Aguaciles(as) y otro Personal de la Rama Judicial que ejerce funciones de recaudación*. Se trabajó a través de sobres marcados como "Confidencial" y reuniones extraordinarias del Pleno en donde se discutió lo que a todas luces se sabe desde el año pasado: que el presupuesto de la Rama Judicial para el año fiscal en curso se redujo por más de cincuenta millones de dólares ($50,000,000.000).

En los últimos días, la Mayoría que hoy avala la Resolución que antecede optó por actuar a la ligera y escogió el camino más corto: atropellar a los empleados de nuestra Rama Judicial. Esos servidores que con su esfuerzo y sentido de compromiso garantizan el

---

[8] *In re: Aprobación de los Derechos Arancelarios pagaderos a los(as) Secretarios(as), los(as) Aguaciles(as) y otro Personal de la Rama Judicial que ejerce funciones de recaudación,* Voto Particular Disidente de Pabón Charneco, J. pág. 11

funcionamiento de nuestro sistema. A la luz del incidente de seguridad que ocurrió en la sede de este Tribunal la semana pasada, se solicitó posponer por menos de un día laborable la certificación de la Resolución de epígrafe. Aun cuando se logró la posposición, se acusó a esta servidora y a los compañeros jueces disidentes de poner en jaque el pago de los beneficios económicos a los que son acreedores los empleados públicos de nuestra Rama. El atropello contra nuestros empleados públicos incluso llegó a los despachos del Tribunal Supremo. Ello con el único fin de justificar lo injustificable.

No cuestiono el hecho de que nuestra Rama se encuentra sumida en una crisis presupuestaria sin precedentes. Los efectos de la tormenta socioeconómica que arropa a la Isla también se han sentido en la Rama Judicial de manera contundente. En ese sentido, evidentemente se necesitan tomar medidas responsables para cumplir con las obligaciones institucionales de la Rama Judicial así como con los servicios constitucionales que se le deben al Pueblo de Puerto Rico. Ciertamente el Poder para atajar esta crisis le pertenece a este Tribunal. Se nos ha delegado este Poder bajo la premisa que este se ejercerá de manera responsable con los mejores intereses del Pueblo como norte. Lamentablemente una Mayoría de miembros de este Tribunal, al igual que con la solicitud de aumento en los aranceles judiciales,

han sucumbido a la arbitrariedad lacerando con ello la confianza del Pueblo en esta institución. La necesidad de las medidas que se necesitan para atajar la crisis fiscal que enfrenta nuestra Rama no representa una luz verde para actuar a la ligera y sin un grado de empatía básico. No obstante, cinco (5) jueces de este Tribunal optaron por actuar apresuradamente al tomar las medidas "fáciles" en lugar de sentarse a dilucidar con la seriedad que se merece si existen otras alternativas a las que hoy se proponen. Así, hoy anuncian el recorte y la eventual eliminación del pago de exceso de balance de la licencia de enfermedad al cual son acreedores los empleados de la Rama Judicial.

En la Resolución que antecede se expresa que la Rama Judicial ha tomado medidas para atajar gastos y atender la crisis presupuestaria. En todo momento durante la discusión del asunto de referencia los jueces que hoy disentimos le solicitamos a la Jueza Presidenta un desglose detallado de los gastos institucionales de la Oficina de Administración de los Tribunales (O.A.T.). Se nos contestó con generalidades y nunca se nos proveyó un documento concreto en el cual se pudieran apreciar los contratos que ha pactado la O.A.T. durante este año fiscal.

Inconforme con ese proceder, visité el portal cibernético de la Oficina de la Contralora de Puerto Rico para realizar una investigación que me permitiera tomar

una decisión informada en cuanto al asunto de epígrafe. Lo que encontré, muy a mi pesar, fue una cantidad enorme de contratos que pactó la O.A.T. durante este año fiscal. Entre los contratos que pude encontrar, que para nada representan la totalidad de los gastos reales de la O.A.T., resaltan contratos ascendentes a **casi medio millón de dólares** en calidad de "Servicios Legales".[9] Ello a pesar de que la O.A.T. cuenta con una división interna de asuntos legales. Otro contrato que llama la atención es uno pactado por "Servicios de Oficial de Prensa" con la firma Eje Puerto Rico, Inc. El 5 de agosto de 2014 se firmó un contrato con vigencia hasta el 30 de junio de 2015 por la cantidad de ciento cincuenta mil dólares ($150,000.00).[10] Por último, pude encontrar calidad de "Servicios de Trabajador Social, Consejero o Psicólogo" por la suma de trescientos ochenta y cuatro mil ochocientos ochenta y cinco dólares ($384,885.00) gastados en servicios de trabajador social.[11] Todos estos contratos se pactaron en el año fiscal en curso, **cuando ya la Rama Judicial conocía que se enfrentaba a una reducción de más de cincuenta millones de dólares**

---

[9] Véase, Oficina del Contralor, Contratos de O.A.T. Número 2015-00001, 2015-000063, 2014-000039, 2015-000003, 2015-000008, 2014-000236, 2015-000011, 2015-000081, 2015-000048, 2015-000240, 2015-000043, 2014-000105, 2015-000015.

[10] Véase, Oficina del Contralor, Contrato O.A.T. Número 2015-00041, firmando el 5 de agosto de 2014 con vigencia hasta el 30 de junio de 2015.

**($50,000,000.00) en su presupuesto.** No me parece un ejercicio prudente del Poder que aún a sabiendas del estado precario del presupuesto de nuestra Rama se despilfarre una cantidad tan exorbitante de dinero.

Ante este escenario, hoy una Mayoría toma la decisión sencilla: pasarle la factura a los empleados. Durante el mes en curso los empleados de la Rama Judicial tenían derecho al pago de exceso de balance de la licencia de enfermedad. Como es de conocimiento general, este pago se hace anualmente por lo que la Rama Judicial debía tener presupuestado los fondos para cumplir con esa obligación. Ello a pesar de conocer que su presupuesto se redujo en una cantidad considerable. Hoy de un plumazo se elimina ese beneficio. Irónicamente -o cruelmente, podríamos decir- esa decisión la toma la misma mayoría que validó la reforma del retiro de los empleados públicos.[12]

Ante ese escenario, ciertamente había que tomar medidas para garantizar el pago de beneficios a nuestros empleados. Por eso es que asombra que se esperara hasta el mes en que el pago estaba programado para certificar a la ligera las Resoluciones de epígrafe con las cuales se viabiliza pagar solamente en parte el beneficio al que tienen derecho los empleados. Aparentemente, la cantidad

---

[11] Véase, Oficina del Contralor, Contratos de O.A.T. Número 2014-000225, 2015-000004, 2015-000016, 2015-000031, 2015-000051, 2015-000007, 2015-000032, 2015-000046, 2014-000022.

[12] Véase, *Trinidad Hernández et al. v. ELA et al.*, 188 D.P.R. 828 (2013). Esto con excepción de la Jueza Asociada Oronoz Rodríguez quien no formaba parte de este Tribunal en ese momento.

descomunal de gastos que están ocurriendo en la O.A.T., a pesar de que se sabía que la Rama Judicial se enfrentaba a una reducción presupuestaria, no son ni alarmantes ni dignos de cuestionarse para una mayoría de este Tribunal.

Es verdaderamente frustrante que, a pesar de que los contratistas privados de la O.A.T. han continuado recibiendo sus contratos, hoy una Mayoría decida recortar beneficios económicos a nuestros empleados. Es evidente que no se pensó en ellos hasta el último momento: los contratos para entes privados se continuaban firmando, y nuestros servidores públicos se quedaron para el final y recibieron las sobras. Lo más triste de todo este asunto es que a pesar de ello, estoy segura que mañana continuarán sirviéndole al Pueblo de Puerto Rico con el mismo amor y dedicación. Más allá de todo el asunto legal pertinente, me parece muy difícil defender la decisión de hoy desde un punto de vista puramente moral.

## II

En esencia, el lamentable escenario al cual se enfrentan de ahora en adelante nuestros empleados ocurre debido a un ejercicio arbitrario del Poder institucional. Hoy una Mayoría de este Tribunal decidió emprender el camino más cómodo. En lugar de exigir un análisis sosegado y una investigación seria y transparente de los gastos de la Rama Judicial optaron por pasarle la carga a nuestros servidores públicos, en vez de mirar primero si

los intereses privados que hacen negocios con nuestra Rama debían sentir también los efectos de la crisis económica. "El Poder y esos intereses fueron al campo un día". Evidentemente, con la Resolución que antecede, más pudieron los intereses que el sudor de nuestros empleados. Debido a que me rehúso pasarles la factura a nuestros servidores públicos, disiento.


                            Mildred G. Pabón Charneco
                               Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Para eliminar el inciso (d) del
Artículo 10.9; enmendar los
Artículos 18.1, 19.1, 19.9 y
19.10 del Reglamento de la
Administración del Sistema de
Personal de la Rama Judicial,     ER-2015-2
según enmendado.

Voto Particular Disidente emitido por el Juez Asociado señor Estrella Martínez, al cual se unen la Jueza Asociada señora Pabón Charneco y los Jueces Asociados señores Kolthoff Caraballo y Rivera García.

San Juan, Puerto Rico, a 9 de marzo de 2015.

Existen dos caminos para atender la crisis fiscal de la Rama Judicial. El primero implica defender vigorosamente la independencia judicial y reclamarle a las Ramas Ejecutiva y Legislativa que cesen y desistan de la práctica de realizar "ajustes" presupuestarios inconstitucionales por afectar el buen funcionamiento de la Rama Judicial, al punto que ya se han cerrado múltiples tribunales en los últimos meses. Conducir con valentía por ese camino conlleva también ejercer una seria disciplina fiscal en la cual primero tienen que aportar y sacrificarse

los sectores poderosos que reciben millones de dólares de la Rama Judicial. El segundo camino, escogido nuevamente por la Mayoría, implica que la crisis fiscal la paguen los asalariados.

Los que prometieron que a costa de los trabajadores se solucionaría la crisis fiscal de Puerto Rico, se equivocaron. Por eso disentí en el pasado.[13] Ahora, tiran la soga para nuevamente estrangular a los trabajadores de la Rama Judicial. Por ello, consecuentemente vuelvo a disentir.

Ante esto, y por entender que la determinación de este Tribunal tiene su génesis en el quebranto de uno de los principios más fundamentales de nuestra separación de poderes, no estoy conforme con ejercer el poder de reglamentación en detrimento de la clase trabajadora.

I

Al amparo de la Constitución de Puerto Rico, consecuentemente se ha reconocido que la autonomía presupuestaria es uno de los principios esenciales que debe caracterizar el funcionamiento de la Rama Judicial. Ello, en aras de garantizar y salvaguardar la independencia judicial que debe imperar dentro de un sistema de justicia unificado inserto en una sociedad

---

[13] *Véase* Trinidad Hernández *et al.* v. ELA *et al.,* 188 DPR 828 (2013). (Opinión disidente, J. Estrella Martínez).

democrática como en la que vivimos. *Véase* Brau, Linares v. ELA *et als,* 190 DPR 315, 345 (2014).

Consiente de la importancia de reconocer y promover activamente la independencia judicial, en varias ocasiones la Asamblea Legislativa de Puerto Rico ha promulgado legislaciones dirigidas a fortalecer la autonomía de esta rama de gobierno en la administración de sus recursos humanos, fiscales y presupuestarios. En ese sentido, en virtud de la Ley Núm. 8 de 14 de julio de 1973, 23 LPRA ant. sec. 81 nt., la Asamblea Legislativa enmendó la pasada Ley de Planificación y Presupuesto de Puerto Rico con el propósito de "disponer la autonomía presupuestaria para la Rama Judicial de forma que satisfaga las necesidades de la comunidad puertorriqueña en cuanto a la administración de la justicia".

Particularmente, en la Exposición de Motivos de la referida ley, el legislador tuvo a bien expresar que:

> El procedimiento que se ha seguido hasta el presente en la preparación y aprobación del presupuesto de la Rama Judicial es básicamente defectuoso e inapropiado. En vista de ello, debe brindársele a la Rama Judicial un más alto grado de autonomía presupuestal, de manera que pueda establecer adecuadamente sus prioridades de forma que satisfaga plenamente las necesidades de la comunidad puertorriqueña en un área tan vital de nuestro sistema constitucional.

A tales fines, se aprobó el que la Rama Judicial sometiera sus peticiones presupuestarias de gastos ordinarios de funcionamiento directamente a la Asamblea Legislativa. Asimismo, se le confirió al (la) Juez(a) Presidente(a) la administración y ejecución de dicho presupuesto. A pesar de que posteriormente esta disposición también fue reconocida en la ley que creó la Oficina de Gerencia y Presupuesto de Puerto Rico, el legislador no consideró estas actuaciones suficientes. *Véase* Ley Núm. 147 de 18 de junio de 1980, 23 LPRA ant. sec. 1. Por el contrario, a fin de concederle mayor autonomía presupuestaria a la Rama Judicial, el 20 de diciembre de 2002 enmendó la referida Ley Orgánica de la Oficina de Gerencia y Presupuesto. De esta forma, a la Rama Judicial se le asignó un **porcentaje presupuestario fijo** a ser asignado de las rentas anuales ingresadas al Fondo General del Tesoro de Puerto Rico. *Véase* Ley Núm. 286-2002, 23 LPRA sec. 104. Al instaurar esta fórmula, el legislador consignó las expresiones que transcribimos a continuación:

> Esta Ley permitirá una efectiva y plena autonomía presupuestaria para la Rama Judicial y hará posible, mediante la fórmula propuesta, que los esfuerzos dirigidos a ofrecer servicios judiciales de excelencia y verdaderas reformas en la administración de la justicia, se vayan implantando y expandiendo en relación y a tono con los recursos con los que cuente el Estado en

determinado año. **Además, hará posible la efectiva instrumentación del principio fundamental y básico de la separación de poderes contenido en nuestra Constitución y el logro del más adecuado balance y equilibrio entre las tres ramas de gobierno, al proveer a la Rama Judicial el mecanismo para una efectiva autonomía presupuestaria a fin de que desarrolle como Rama igual e independiente sus programas y logre plenamente sus objetivos y su encomienda constitucional.** (Énfasis suplido).

Como vemos, la Asamblea Legislativa de Puerto Rico enfáticamente ha reconocido la importancia de respetar la autonomía presupuestaria de la Rama Judicial en aras de salvaguardar la independencia judicial. Ello, porque como es ampliamente conocido, mediante esta salvaguarda es que se "garantiza[] en nuestra vida política, social y económica un régimen de derecho a diferencia de un régimen de fuerza o de hombres". Brau, Linares v. ELA *et als.*, *supra*, pág. 349. (Citas omitidas).

Lamentablemente, y en total contravención con lo anterior, mediante el Art. 24 de la Ley Núm. 66-2014, conocida como la *Ley Especial para la Sostenibilidad Fiscal y Operacional del Gobierno del Estado Libre Asociado de Puerto Rico*, se determinó que durante el año fiscal 2014-2015 el presupuesto de la Rama Judicial equivaldría al del año fiscal previo, ajustado al Presupuesto General de Gastos con cargo al Fondo General. Es decir, a pesar de que las legislaciones en las que se le reconoce la autonomía presupuestaria a la Rama

Judicial están sustentadas en la efectiva instrumentación de la doctrina de separación de poderes, se dejó sin efecto la fórmula creada para fortalecer y preservar tal autonomía.

A raíz de esta legislación, durante el año fiscal 2014-2015 la Rama Judicial recibiría 25.8 millones de dólares menos que el presupuesto del año fiscal 2013-2014 y 53.9 millones de dólares menos de lo que le correspondía a base de la fórmula consignada en la Ley Núm. 286-2002. *Véase* Orden Administrativa OAJP-2014-006 del 7 de julio de 2014 sobre *Medidas de Control de Gastos Año Fiscal 2014-2015*, Tribunal Supremo de Puerto Rico. En atención a este ataque fiscal, el cual transgrede los principios de autonomía presupuestaria que regían la administración de nuestra rama de gobierno, sin lugar a dudas, correspondía que se actuara de forma proactiva y se denunciara tal proceder.

Sin embargo, y muy lamentablemente, la Oficina de Administración de los Tribunales (OAT) claudicó en su deber de ser férreos vigilantes de nuestra independencia judicial y se sumergió en la inercia. En vez de denunciar, ante la Rama Legislativa y reclamar ante los foros judiciales pertinentes, cómo la reducción arbitraria del presupuesto asignado a una rama de gobierno independiente que no genera fondos era socavado en conjunto con su autonomía, simplemente se allanaron a

estos ajustes. Peor aún, aceptaron las migajas a pesar que desde ese entonces conocían que no iba a ser posible administrar la Rama Judicial con el presupuesto defectuoso e inapropiado que se aprobó.

El proceder de la OAT, al no reclamar y defender los postulados de autonomía e independencia judicial, evidencia una pasividad inaceptable. A fin de cuentas, estos principios son los que permiten que los ciudadanos puedan sentirse tranquilos y confiados de que en su día van a ser acreedores de los remedios que en derecho proceden. Conviene hacer hincapié en que esa pasividad no tan solo repercutió en medidas como las que hoy se aprueban, sino que ha sido la responsable del cierre de múltiples tribunales de justicia en Puerto Rico. Por tanto, además de que la accesibilidad se ha ido restringiendo significativamente, ahora también se pasa factura contra los más débiles, nuestros servidores públicos. ¿Por qué no se le pasa factura a las ramas que han cercenado los recursos de la Rama Judicial en contravención de la independencia judicial y a los sectores más poderosos que se nutren de millones de dólares en contratos y transacciones cuestionables?

Por el contrario, optan por el camino "más fácil" de aplastar al más débil. Hoy se aprueban mediante Resolución varias enmiendas al Reglamento de la Administración del Sistema de Personal de la Rama

Judicial y a las Reglas de Administración del Sistema de Personal de la Rama Judicial que trastocan beneficios de empleados y empleadas.

A pesar de la seriedad y el impacto que estas medidas tienen para nuestros empleados y funcionarios públicos, se descartó el camino difícil, pero más justo y responsable. Igualmente, se descartó el proceso de diálogo con los empleados y empleadas, quienes conocen dónde está la "grasa" en cada tribunal y dependencia. Por consiguiente, ¿cómo se justifica que a los mismos empleados que se vieron afectados por las modificaciones inconstitucionales impuestas al Sistema de Retiro, y a los cuales no se les revisa su escala salarial por más de una década, se les continúen eliminando beneficios? Tenemos que preguntarnos, ¿por qué siguen atacando a los más débiles de nuestro sistema? No hay una respuesta concreta, sino simplemente la imposición de una política administrativa arbitraria aprobada sin implantar las alternativas contra los sectores más poderosos y sin atreverse a confrontar primero a la Rama Ejecutiva y Legislativa. A fin de cuentas, la defensa de la autonomía presupuestaria y de la independencia judicial no puede limitarse a defender las condiciones que deben existir para que el juzgador descargue su función constitucional, sino que se extiende a velar por el adecuado funcionamiento del sistema de justicia. En vez de

realizar con valentía ese reclamo ante la Rama Ejecutiva y Legislativa, la Mayoría de este Tribunal se une a ellas en el coro de medidas impositivas.

Ante ese cuadro, nos encontramos ante una Mayoría que ha claudicado en la defensa de estos postulados y, como consecuencia, comete una gran injusticia contra nuestros empleados y empleadas, tal como lo hicieron en el pasado con el resto de los empleados y empleadas públicos.

Durante la Juramentación de nuevos abogados y abogadas celebrada el pasado viernes 20 de febrero, la Honorable Jueza Presidenta señora Fiol Matta expresó que en nuestra sociedad "siempre habrá injusticias que combatir". En razón de ello, denunció la falta de creatividad y compasión que generalmente se emplea al momento de atender estas injusticias. Además, enfatizó que para poder combatirlas de manera efectiva y con verdadera empatía es necesario colocarse en la misma posición que nuestros ciudadanos.

Ante esto, cuestionamos cómo la Resolución que antecede es empática con los empleados y los funcionarios de nuestra Rama Judicial. Hoy, mediante el voto de una Mayoría de los jueces, este Tribunal se convierte en el perpetrador de una de las injusticias que como foro judicial está llamado a resolver. ¿Dónde queda la creatividad que está supuesta a emplearse cuando atendemos situaciones presupuestarias como la que hoy

enfrenta nuestra Rama Judicial? ¿Acaso no era más prudente y razonable que se auscultaran alternativas menos onerosas para nuestros empleados y más efectivas para suplir el desfase presupuestario causado por la inercia de la administración de nuestros tribunales?

La ciudadanía y los empleados no deben pagar por los desaciertos administrativos mediante los cuales se obligó la mayoría de los fondos de la Rama Judicial. Como es de conocimiento público, una parte significativa del presupuesto está siendo desangrado por el arrendamiento de obras faraónicas altamente cuestionables. De hecho, varios de estos arrendamientos han sido objeto de señalamientos concretos por parte de la Oficina del Contralor de Puerto Rico. *Informes de Auditoría DA-12-52 & DA-12-53* emitidos por la Oficina del Contralor de Puerto Rico el 19 de marzo de 2012. *Véase,* además, *In re: Reglamento de Subastas de la Rama Judicial,* res. el 12 de noviembre de 2014, 2014 TSPR 135, 192 DPR ____ (2014).

Llegó el momento de que el estado de emergencia fiscal no lacere en primera instancia el bolsillo del Pueblo y los trabajadores. No podemos avalar las políticas impositivas y de incumplimiento con los compromisos contractuales asumidos con nuestros empleados públicos. Al contrario, procede que legítimamente continuemos cuestionando: ¿por qué este tipo de políticas no son implantadas contra los más poderosos del sistema?;

¿por qué no se auscultan mayores ahorros mediante la revisión de los contratos millonarios de arrendamiento?; ¿por qué no se reclamó primero ante los foros pertinentes el reembolso y el cese y desista de los ajustes presupuestarios ilegales? Sin duda, estas medidas serían mucho más sustanciales y efectivas que las propuestas.

En vez de analizar otras alternativas y sentarse a escuchar las propuestas que tiene el personal que opera diariamente en nuestro sistema, los recortes se fraguaron bajo el manto de la confidencialidad y unilateralidad. Éste no era el curso de acción a seguir, mucho menos cuando todavía hay mecanismos para abaratar costos sin lacerar irrazonablemente los beneficios de nuestros empleados y funcionarios.

En razón de ello, no puedo avalar las medidas avasalladoras que hoy se aprueban, sino que denuncio y desapruebo este proceder. La necesidad de que la administración no cediera en su defensa por la independencia presupuestaria de nuestra rama y la necesidad de caminar hacia la implantación de medidas que atiendan la crisis presupuetaria de una manera justa y racional, me obligan a disentir.

Luis F. Estrella Martínez
Juez Asociado